Dyer *v.* Waters.

REEVES S. DYER, administrator of Elizabeth Waters,

*v.*

EPHRAIM WATERS et al., executors, &c., of Ephraim Waters,. deceased.

1. The reason of the rule that the statute of limitations does not apply to. express trusts is, that the possession of the trustee—whether of land or personal. security, or the income or earnings of either—is the possession of the *cestui que trust*, and that no action at law will lie by the latter against the former for any money payments due.

2. The *cestui que trust* cannot be said to have slept upon his right to relief in, this court against the trustee until the latter has assumed some position of antagonism to, or defiance of, the former's rights, of which he has notice.

3. A mere retention by the trustee of a portion of the income of the trust fund, with the consent of the *cestui que trust*, and without any pretence that it is so retained upon a claim of right, does not produce such hostile attitude.

4. The principle upon which courts of equity refuse to enforce stale claims, in cases where the statute of limitations does not apply, either directly or by analogy, is, that, considering all the circumstances, it would be inequitable to do so, by reason of the danger of doing injustice to the defendant after so long. a lapse of time.

On bill, answer and proofs.

*Mr. H. A. Drake*, for the complainant.

*Mr. D. J. Pancoast*, for the defendant Waters.

PITNEY, V. C.

The bill is filed by the administrator of a *cestui que trust* against her trustee, for an account of his trusteeship. The trust was created by the husband of complainant's intestate, who was the father of defendant, by his will, proven August 8th, 1866. By it he directed his executors, the defendants, " to place at interest the sum of $8,500 and to collect the interest on the same half yearly, and to pay the said interest half yearly to his wife,. Elizabeth Waters, during her lifetime."

The estate of the deceased was taken possession of by the defendant, Ephraim Waters, and he has had actual charge and management of it, and is the sole answering defendant.

The bill alleges, that at the death of the tenant for life, the intestate herein, large arrears of interest were due her from the defendant Waters, and prays an account.

The defendant Waters makes two defences: *First.* He says he paid his mother the full amount of her annual interest during her lifetime, and that he has paid out of his own estate, since her death, the expenses of her funeral, and so forth. *Second.* He sets up the statute of limitations. I will consider these defences in their order.

[Here follows a discussion of the facts, which is omitted as unnecessary to a proper understanding of the points decided.— REP.]

Upon the whole case, I conclude the defendant has failed to support his defence of payment in full, and I therefore come to the second defence, viz., the statute of limitations and lapse of time; or, in other words, stale claim.

The familiar rule, applicable to cases of trust, is, that the statute of limitations does not apply to an express trust, and the trust in this case is an express one. The reason of the rule is, that in such cases the possession of the trustee is the possession of the *cestui que trust*—whether it be of lands, personal securities, or the income and earnings of either—and that no action at law will lie by the latter against the former for any money payments due, and that the only relief is by bill in equity for an account. *Partridge* v. *Wells, 3 Stew. Eq. 176, 178; Marsh* v. *Oliver, 1 McCart. 259, 262,* per Chancellor Green; *Buckingham* v. *Ludlum, 10 Stew. Eq. 137, 144, 14 Stew. Eq. 539.*

And, with regard to the remedy in this court, it is worthy of remark, that the *cestui que trust* cannot properly be said to have slept upon his rights until his trustee has assumed some position of antagonism or hostility to, or defiance of, his *cestui que trust's* rights, of which he has notice. A mere retention in his possession by the trustee of a portion of the income of the trust fund, with the consent of the *cestui que trust,* and without any pre-

tence that it is so retained upon a claim of right, would not produce such hostile attitude. The rule above stated included ordinary pecuniary legacies previous to the statute giving an action at law to recover them, after which the statute was held a bar in equity, as well as at law, the rule being, that if there be concurrent remedies, and the demand is barred at law, it is also barred in equity.

It was well settled in England, prior to the new statute of limitations of *3 and 4 Wm. IV.*, that equity would decree an account against the trustee for rents, annuities and interest, without regard to the statute of limitations. *Attorney-General* v. *Brewery Company, 1 Meriv. 495; Chalmer* v. *Bradley, 1 Jac. & W. 51, 64; Ward* v. *Arch, 12 Sim. \*472; Wedderborn* v. *Wedderborn, 2 Keen 722, 4 Myl. & C. 41; Beaumont* v. *Boultbee, 5 Ves. 485; Mathew* v. *Brise, 14 Beav. 341; Man* v. *Ricketts, 13 L. J. (N. S.) Ch. 194.*

The peculiar provisions of the statute *3 and 4 Wm. IV.* render the later English decisions not entirely applicable in this state, and it is therefore not worth while to cite them, but an examination of them will show that they support the rule above stated; and see the very recent case of *Lyall* v. *Kennedy*, in the house of lords, *14 L. R. App. Cas. 437, 456 et seq.*

In the case in hand, if the defendant had literally and completely carried out the instructions of the will by especially investing the sum named for the benefit of his mother, or by setting aside and ear-marking bonds and mortgages or other competent securities for that purpose from the testator's estate, and had collected the interest from time to time, and had dealt with it in such a manner as to render himself liable to an action at law at her suit for money had and received,-then a serious question would arise, whether this court ought not to apply the statute, notwithstanding the general rule above stated. But such is not the case. It appears that the defendant did not make any such especial investment, or set aside or ear-mark any particular securities for the purpose in question, and that no action at law could have been maintained against him, either by his mother in her lifetime or her personal representatives since her death.

He at all times acknowledged the trust, and it does not appear that his mother ever knew that he had not fully performed his duty, so far as the investments were concerned. He does not appear to have ever, at any time, either before or after his mother's death, assumed toward her or her representative an attitude of hostility inconsistent with the existence of the trust, and his duty to account for his dealings with it and income from it. He never, at any time, set up a settlement or release or its equivalent. The case then appears to be clearly within the rule laid down in the cases above cited. And the statute of limitations does not apply, either directly or by analogy.

But it is said that the statute of limitations ought, by analogy, to be considered as running from the date of decedent's death, and it is urged that the lapse of time and delay to enforce complainant's rights are such as to make it inequitable for this court at this day to give relief; that it ought to be presumed from decedent's inaction that she gave her son the surplus income not actually used by her.

I do not think that the inaction of the decedent, of itself, is sufficient to stay the hand of the court. Presumably she had a settlement in April, 1870, and took her son's note for a balance which is now clearly outlawed. Afterwards he made small payments from time to time on account of what should have been due her, sufficient to satisfy her current wants, and she, at least as early as 1878, had reached such a state of senile imbecility or second childhood, that it would be unsafe to base any presumption upon her inaction.

The lapse of time since her decease and before the filing of the bill is more serious. She died May 28th, 1881. Letters of administration were granted to complainant January 5th, 1887, and the bill herein was filed October, 1887, six years and over five months from her death. The delay to take out letters and commence suit is in a great part accounted for by efforts on the part of the complainant to settle the affair between his wife and the defendants (who were the sole next of kin) amicably and without suit. Complainant computed the amount due by defendant to his mother-in-law at considerably over $5,000, and pro-

posed to fix it at that sum, and that out of it he should have $1,000 for taking care of the deceased for the ten years she lived with him, and the balance of $4,000 should be divided equally between Mrs. Dyer and the defendant. The latter disputed the amount due the complainant for board, and also the amount due from him for arrears of interest, but I do not understand from the evidence that he contended that nothing was due. The only question was, how much. He certainly did not then set up a release or its equivalent. On the contrary, he himself offered to settle on a basis of $4,000 due from him, which complainant declined. It is said that this offer should not be used against the defendant, because it was made by way of compromise. If it had been accompanied with a protest that nothing was due, or that he had a receipt or release from his mother which precluded an account, but was willing to pay so much for peace, the position would have been well taken, but the evidence does not show this state of facts, and it is hard to believe that a man, who owed nothing, would offer as much as $4,000 to avoid a lawsuit in which the total claim was only about $5,000.

These negotiations for settlement extended over a considerable period of time, and are proper to be considered by this court in this connection. And, as before remarked, they were all based upon a continuing duty on the part of the defendant to account as trustee. I find no evidence that he ever insisted that he had paid his mother in full until the filing of his answer herein. At the last meeting between the parties, with a view of settlement, the complainant stated his best terms to be, to settle upon the basis of $5,000, due from the defendant, and the defendant asked for time to consider whether or not he should pay that amount. After waiting a considerable time, without hearing from him, complainant commenced suit. Another circumstance is worthy of notice. Among the payments made by defendant after his mother's death, is one to a church for dues from his mother. For these dues defendant was not personally responsible. The bill for them was made out to "the estate of Elizabeth Waters," and was paid by defendant in 1882, less than six years before the filing of the bill. Complainant argues that such payment

was an admission by defendant that so much money was due from him to his mother's estate at that time, and that it amounted to a payment on account, with all the consequences of such payment.

The principle upon which courts of equity refuse to enforce stale claims, in cases where the statute of limitations does not apply either directly or by analogy, is, that, considering all the circumstances, it would be inequitable to do so by reason of the danger of doing injustice to the defendant, because, for instance, the defendant, by reason of the delay, has changed his position irretrievably, or lost some advantage he was entitled to keep, or that evidence has been lost or facts obscured by the lapse of time. *Story Eq. Jur.* § *529.*

Upon a careful consideration of the case in hand, I find nothing to lead to the conclusion that there is any reason to fear that injustice will be done to defendant by calling on him to account in this case. It ought to be a simple and easy matter for him to prove what payments he has made to his mother or on her account. He has had opportunity to state those payments under oath. He does not pretend that he set aside or specially invested the fund in question, and that, owing to inability to keep it constantly invested, he did not receive the full interest it was capable of earning, or that he lost a portion of it through unfortunate investments, and that it would be hard for him at this date to show the circumstances which would excuse the loss. Defendant sets up no loss. In point of fact, he has been guilty of a breach of trust in not properly investing, and, hence, is liable for full interest. His only misfortune, according to his own statement, is, that he paid his mother moneys without taking vouchers or making entries to perpetuate the proof of such payment. He does not set up either the loss of vouchers or the death of witnesses who could prove such payments, or any of them. In fact, his answer sets up no special facts or circumstances to show that it is inequitable now to call upon him to account. It rests simply upon a statement that the statute of limitations applies.

And it is an important consideration, upon a view of the whole case, that defendant had it in his power, at any and all times

during these many years, to come, by his own motion, before the appropriate judicial tribunal and procure a settlement of his accounts as trustee, and the protection of a judicial decree.

I find the case quite covered, in all its aspects, by two cases in our reports: *Cook, Admr. of Allen,* v. *Williams, Exr. of Woolley, 1 Gr. Ch. 209,* and *Williams* v. *McKay, 13 Stew. Eq. 189, 197.*

In the earlier of these cases, the trust was created in 1807. The trustee died in 1826, and the *cestui que trust* sometime prior to April 27th, 1830. On that day letters of administration upon the estate of the *cestui que trust* were granted to the complainant. And the bill was filed April 14th, 1836, a few days short of six years after the granting of letters. How long before that date the *cestui que trust* died does not positively appear, but it must have been a considerable period, for the case shows that her friends made a pretended settlement of the account with the defendant before administration granted. So, I think I am justified in inferring that the bill was filed more than six years after the death of the *cestui que trust,* and more than nine years after the death of the trustee. The bill was sustained, and the account ordered.

In the later case, defendants were charged with a breach of trust as officers of a savings bank, and set up the statute of limitations and lapse of time. The learned chief-justice, speaking for the court of errors and appeals, overruled this defence, and in language which, I think, includes and covers the present case.

There should be the usual decree for an account.