This motion is to strike the bill for want of equity. For the purposes of this motion the defendant admits it to be true as alleged, that he and the complainant Mrs. Brant, being tenants in common, in equal shares of one and thirty-four hundredths acres of land in the Newark meadows, he filed a bill for partition, and, complainants' solicitor consenting thereto, a decree for sale was entered. The selling master made the statutory publication, and on the day set adjourned the sale one week, no one being present, and on the adjourned day struck off the property to the defendant for $2,000, he being the only bidder. No notice of the sale was sent to the *Page 397 
complainant or to her solicitor in accordance with the usual custom of selling masters, nor was either notified of the adjourned day, although the master notified the defendant of the day to which the sale had been adjourned. The complainants' solicitor had co-operated with the defendant, a lawyer, in the partition suit, and after consenting in writing to the form of the decree, delivered it to the defendant, for the purpose of having a selling master designated and having it signed by the chancellor. He expected a notice from the defendant, or from the clerk of the court, of the signing of the decree, and, receiving none, and having heard that the defendant had gone on a two months' vacation, and believing that the forwarding of the decree to the clerk had been delayed on that account, gave no further attention to the matter, relying upon the usual practice of selling masters of forwarding notices of sale to the solicitors of the parties. In the meanwhile, the complainant had arranged with her lawyer to attend the sale, and bid the sum of $4,000, and had arranged for financing the purchase; her solicitor informing her that due notice of the sale would be received from the defendant and the selling master, which he would forward to her. Nothing more was heard by her of the matter until the complainant received a communication from the master asking her to call at his office to receive her share of the proceeds of the sale. At the sale, the defendant represented to the master that lands in the same neighborhood as the land then offered were being purchased by the city of Newark at the rate of $1,500 per acre, but concealed from him the facts that he had offered the complainant $625 for her quarter interest, and $750 to a former tenant in common for his quarter interest, which the complainant later acquired; that the property was assessed by the city of Newark at $3,350, and that the defendant had a purchaser at $4,000. The representation as to the value of the land was made by the defendant to induce the master to believe that the property was worth not more than $1,500 or $2,000, and, believing it, the master sold it to him for the amount of his bid, which the defendant knew to be a grossly inadequate price. *Page 398 
The market value of the land was $4,000, and shortly after the sale the defendant sold and conveyed it to a subsidiary company of the Public Service Corporation for that sum, as he had arranged to do before the master's sale. Promptly after the complainant heard of the master's sale, she filed a petition in the cause, praying that the sale be set aside, and the deed to the defendant canceled, and, by a further petition, prayed that the deed from the defendant to his vendee be canceled, and, in the alternative, that the defendant be ordered to account for the profits. Upon the hearing, upon an order to show cause, directed to all interested parties, the court refused to set aside the sale and the subsequent conveyances because the defendant's vendee was a purchaser for full value without notice and entitled to protection as such, and thereupon discharged the order without prejudice to the right of the complainant to file a bill for an accounting; and she accordingly filed this bill for that purpose.
The court had the power to set aside the sale after the delivery of the deed to the purchaser, by petition in the cause.Mutual Life Insurance Co. v. Goddard, 33 N.J. Eq. 482. And the court has the power to set aside a judicial sale after conveyance to a bona fide grantee of the purchaser at the sale. An innocent purchaser takes his title subject to the power. But whether the court will exercise the power, depends upon a consideration of the equities. Hale v. Clausen, 60 N.Y. 339.
The facts above related, supported by the proof, were abundant cause for setting aside the sale as against the defendant. Excusable mistake or misapprehension of an injured party, unaccompanied by negligence, is generally sufficient to move a court of equity to set aside its sales for inadequate price, to prevent injustice. Mutual Life Insurance Co. v. Goddard,supra. But to charge the defendant, who purchased the common property at partition sale, with the profits on the resale, a breach of trust arising out of co-tenancy, or actual fraud, must be shown. Here, there was no relation of trust and confidence between the complainant and defendant, implied in law, springing from the co-tenancy. They were not in joint possession of the property (it was *Page 399 
meadow land) and had acquired their titles at different times and came into co-tenancy by different conveyances. Such relation, as a matter of law, exists only where the co-tenants hold under the same instrument or devolution of title, or are in joint possession. Breitman v. Jaehnal, 4 N.J. Adv. R. 438; 99 N.J. Eq. 243.
There was a unity of right of possession, but as co-tenants, simply, they were as strangers to each other and at liberty to bring the relations to an end even by the acquisition and enforcement of a superior outstanding right or title. Freem.Co-ten. § 155. And where a relation of trust and confidence is imposed by law on co-tenants, as such, either may purchase the other's interest at a forced or partition sale. Ibid. 165. But though the law implies no relation of trust and confidence unless the co-tenancy has its origin in a single title or they are in joint possession, co-tenants may by "a course of behavior in reference to one another and to the common subject of ownership, indicating an intent to support and respect the common title, create relations of mutual trust and confidence as strong in fact and as worthy of consideration in law as the relation growing out of the acquisition of title from a common source." Had the defendant dealt with the complainant at arm's length and in strict pursuance of his right, without more, purchased at the master's sale, he could not have been held accountable for his co-tenant's failure to protect her interest, nor be called upon to respond for the profits. But he accepted the assistance of complainant's solicitor in facilitating the partition suit and sale, and naturally she had the right to assume that the co-operation would continue, and the right to expect that she would reap her share of the common benefit. The confidence thus enlisted by the defendant could not be disregarded when he found her absent at the bidding, and it must have occurred to him that the opportunity to appropriate her share of the common estate at half its fair value was quite accidental. A conscientious course invited him to resist the temptation, and that she be treated with the same consideration held out to her during the earlier stages of the suit, and that she be given a chance to protect herself. His representation *Page 400 
to the master as to the value of the property, to induce him to strike it off at a grossly inadequate price, and, in this respect, his concealment at the same time of the facts which would have discredited the representation, at least aggravated his indiscretion, if, of themselves, they do not constitute sufficient ground for action, which need not be decided. It is not assuming too much that, if the representation had not been made, or, if made, the truth had not been concealed, the master would have again adjourned the sale and given the complainant actual notice, a privilege previously accorded by him to the defendant. The defendant is chargeable as trustee ex delicto, and if at the hearing the allegations of the bill are sustained by the evidence, the defendant will be decreed to account for the profits derived from the resale of the property, and, consequently, the motion to dismiss will be denied.