MAX B. WILLIG, complainant-appellant,

*v.*

BENJAMIN FRIEDBERG and MOLLY FRIEDBERG, his wife,
defendants-respondents.

[Submitted May term, 1930.  Decided February 9th, 1931.]

*Mr. William Elmer Brown, Jr.,* for the appellant.

*Mr. John C. Reed,* for the respondent.

The opinion of the court was delivered by

DALY, J.

This was a bill to establish and enforce an alleged trust in lands, and compel the defendant Friedberg to convey to the complainant, Willig, a quarter interest in the premises

known as the Imperial Hotel, Atlantic City; and that the defendant be directed to render an accounting of his management and control of the premises.

At the conclusion of the complainant's proofs the defendant's counsel announced that he closed his case and moved for a dismissal of the bill "on the ground that there is no instrument here signed by this defendant that would take this case out of the statute of frauds." The vice-chancellor made a short, general statement of the contention of the complainant and the denial of the defendant, and concluded: "This case is within the statute of frauds, unless the complainant can by his proof bring it without that statute. Payment of a part of the purchase-money is not an act of part performance, to take this oral contract out of the statute. *Cooper* v. *Colson, 66 N. J. Eq. 328; Boulanger* v. *Churchill, 86 N. J. Eq. 96.*" While not questioning the soundness of the decisions cited, it may be said that those cases bear but little, if any, factual analogy to the instant case.

According to the proofs submitted, Willig and Friedberg, who were well acquainted through prior mutual business dealings similar to this one, entered into an oral agreement to purchase the Imperial Hotel property at Atlantic City, Willig to pay one-fourth of the purchase price and to have a one-fourth ownership in the property, Friedberg to pay three-fourths of the purchase price and to have the other three-fourths ownership. Pursuant to this arrangement, which was entered into at the solicitation of Friedberg, a deed dated May 12th, 1925, was made from the owners to Friedberg. There is no evidence as to the date when the deed was delivered or recorded. At the time of the conveyance to Friedberg he assumed, and ever since then has continued to control and manage the premises.

The total purchase price of the property was $98,500, and the conveyance was made subject to the lien of three mortgages upon which there was principal due aggregating the sum of $56,900—first mortgage, $25,000; second mortgage, $12,000; third mortgage, $19,900. While the difference between the purchase price and the face of the mortgage is

$41,600, there is no evidence as to the amount actually paid by Friedberg to the owner at the time of the delivery of the deed. As to the third mortgage of $19,900, it is reasonable to conclude that the parties knew at the time of their agreement it would have to be met in a short time in order to hold the property, and, as a matter of fact, Willig, in July, 1925, did pay to Friedberg his one-fourth towards such payment, as evidenced by *Exhibit C-2,* hereinafter referred to. This same *Exhibit C-2* further shows that Willig paid to Friedberg his one-fourth of the difference between the purchase price of the property and the total of the three mortgages thereon at the time of the conveyance. On June 13th, 1925, Friedberg went to Willig, and, in the language of Willig, "he says he made settlement, and this is the share that I ought to give him, and he made out the check himself and I signed it for him." This check, dated June 13th, 1925, for $5,448, is in the handwriting of Friedberg, and there is no doubt it was paid by Willig to Friedberg on account of the purchase price of the Imperial Hotel property, and this is acknowledged in the handwriting of Friedberg—the *Exhibit C-2.*

Sometime in July, 1925, Friedberg went to Willig's office at Philadelphia and there saw Willig and Willig's son, Samuel, and presented to them the following paper:

```
                                         "IMPERIAL HOTEL.
Mortgage & interest ................................. 2022203
         one fourth ................................. 505501
One fourth of investment
One fourth investment .............................. 1140066
                                                     ─────────
                                                     16455.67
About 3000.00 Bal from Columb ...................... 3000
                                                     ─────────
Less 5400 .......................................... 19455.67
      (5448 ........................................ 5448.
                                                     ─────────
                                                     1400767
```
We gave Friedberg note for 14,000 before."

This was marked *Exhibit C-2* at the hearing, and is the exhibit hereinbefore referred to. It was testified to by Willig and his son—and it was not denied or disputed by any

one—that all of *Exhibit C-2* was in Friedberg's handwriting, excepting the figures "5448," and the bottom notation, "we gave Friedberg note for $14,000 before." These changes or additions to Friedberg's statement, *Exhibit C-2,* were made by Willig's son, Samuel, and they were explained by the son through the following questions and answers:

"*Q.* Mr. Willig, I notice a memorandum on this paper 'mortgage interest,' $20,222.03, do you know what mortgage that referred to? *A.* That was a mortgage on the Imperial Hotel which Mr. Friedberg had paid off between the time of the settlement and the time of this little account, and it was, therefore, added to the total investment to determine how much my father still owed him, and that is how these figures were arrived at, he added the $20,222.03 to take one-fourth of that, this is in his handwriting. I am reading from the statement, one-fourth, $5,055.01, one-fourth investment, $11,466, making a total of $16,455.67, and then added another item there of three thousand, which he claimed due him in another transaction between my father and him, making a total of $19,455, subtracted from that $5,448, the amount of the first check, leaving a balance of $14,000, which is the note given to him at that time. *Q.* The $3,000 item, do I understand, refers to another transaction? *A.* Another account. *Q.* Between your father and Mr. Friedberg? *A.* Yes. *Q.* Where was that property? *A.* Property in Philadelphia, Columbia avenue, he has here, 'less about $3,000 balance from Columbia,' Columbia avenue properties."

The note of $41,000, referred to in *Exhibit C-2* together with interest was fully paid by Willig, who also subsequently gave Friedberg, on account of the hotel property, two checks amounting to $2,500. These two amounts added to the check of June 13th, 1925, for $5,448, and deducting from the total thereof the $3,000 which was for the Philadelphia property, referred to in *Exhibit C-2* and explained by Willig's son, show that Friedberg received the sum of $18,498 from Willig in payment of Willig's one-fourth share in the hotel property. This amount of $18,498 substantially harmonizes with one-fourth of the total paid on account of the purchase price and for the reduction of the mortgages.

The defendant Friedberg, in the answer filed by him, not only denies there was an agreement but also goes so far as to specifically and repeatedly assert he never received any money from Willig on account of the purchase of this property; and yet, notwithstanding the serious allegations in the bill of complaint, substantially charging him with violating trust, confidence and square dealing, and the evidence brought out at the hearing in support of the charges, he, Friedberg, does not go on the stand to deny, justify or explain; nor does he present any testimony otherwise. Apparently, he assumes the position—as evidenced by one of the pleas in his answer—that the "agreement, if made, was wholly oral and therefore within the scope and operation of the statute of frauds" and as indicated by his counsel at the hearing when he gave that as the only ground for dismissal of the bill—that because of the statute of frauds he can laugh at Willig, whose $18,498 he got on his persuasion and representation to Willig that Willig was the one-fourth owner of the property. It is indeed true that this vitally necessary statute shall be maintained in full force and vigor within its proper scope and operation, and that it is operative in equity as well as in law. Yet, the statute to prevent frauds is not to be used as an instrument of fraud. *Powell* v. *Yearance, 73 N. J. Eq. 117.* When Friedberg presented to Willig the memorandum headed Imperial Hotel (*Exhibit C-2*), he therein, in his own handwriting, recognized that Willig was a one-fourth owner of the property; that as such Willig had already made an investment of $5,448; and that as such one-fourth owner Willig then owed him $11,000 more. Friedberg obtained this $11,000 from Willig upon Friedberg's representation that Willig was the owner of the one-fourth of the property—the legal title of which was held in Friedberg. To permit Friedberg to evade giving a deed to Willig would be allowing him to perpetrate a fraud.

The proof in this case is uncontradicted and conclusive that there was an oral agreement between Friedberg and Willig as to the ownership of the Imperial Hotel property and that Willig has fully performed his part of the agree-

ment. The statute of frauds does not require that trusts of land shall be *created* by writing, but only that they shall be *manifested* and *proven* by that means, and for this purpose letters or other documents written long after the creation of the trust are sufficient. The writings must show the terms and subject of the trust, and for this purpose they may be construed in the light of the established facts and circumstances of the case. *Newkirk* v. *Place, 47 N. J. Eq. 477.* *Exhibit C-2,* hereinbefore set forth in full, in the handwriting of Friedberg, shows that the subject of the trust was the Imperial Hotel property and that the trust was that the man from whom he had received $5,448 and from whom he received a note for $14,000, upon the presentation of his written statement, had a one-fourth investment in the property, and from the established facts and circumstances in the case this investment was a one-fourth ownership in the property. For the purpose of arriving at the meanings of the writings, all the circumstances of the case may be taken into account. *Newkirk* v. *Place, supra.* The proof may be found and deduced from one or more writings, if they bear a relation to each other and import a trust, and such proof need not be contemporaneous with the creation of the trust, but will suffice if made after long intervals. The writing need not be of a formal character, but a trust may be imported and proved by letters, deeds and other writings signed by the party to be charged. *Aller* v. *Crouter, 64 N. J. Eq. 381.* It is true that the trust must not only be manifested and proved in writing, it must be signed by the party to be charged with the trust. But, as heretofore stated, it is not essential that the agreement or trust be contained in one writing, and while it is true that *Exhibit C-2,* though in the handwriting of Friedberg, is not signed by him, still it will be sufficient to satisfy the statute if Friedberg signed other papers that, taken in connection with his written statement (*Exhibit C-2*), is a signature in acknowledgment of the trust, the subject and terms of which are set forth in *Exhibit C-2. Johnson & Miller* v. *Buck, 35 N. J. Law 338; Newkirk* v. *Place, supra; Aller* v. *Crouter, supra.* A letter

from Friedberg to Willig, signed by Friedberg, dated June 1st, 1926 (*Exhibit C-5*), requests Willig to deposit for him, Friedberg, $3,000 in the Southwark bank as he is "over-drawn" and in need of funds for the "Imperial." In response to this letter Willig sent Friedberg check for $2,050 (*Exhibit C-6*), and check for $450 (*Exhibit C-7*), and each of these checks had written on the face "a/c Imperial Hotel a/c," and each of them was returned endorsed by Friedberg, as the payee. In a letter dated April 16th, 1928, signed by Friedberg and addressed to Willig (*Exhibit C-8*), Friedberg writes to Willig that he had credited Willig with "$2,000 on account of the Imperial Hotel," and in this letter asserts "you failed to mail me a duplicate of the Imperial statement, please do so. As I want to have this straightened out." This unquestionably refers to Friedberg's statement to Willig, *Exhibit C-2*. On April 15th, 1928, Friedberg wrote to Willig, signing his letter B. F. (*Exhibit C-9*) : "Have you located statement from the Imperial Hotel if you will you please do so and send me a copy of the same. Make it as soon as possible as I want to straighten the above out. You have in your book a charge for 2500—given on account of the Imperial my credit is only 2000—as I have applied 500 was due me from you for rent on a apts for 1925."

From all the proofs in this case there is no doubt there was a trust agreement between the parties as alleged in the bill of complaint, and we find that this has been manifested and proved by writing; and, we further find from the writings in this case, bearing a relation to each other and importing the trust, there is proof that the trust so manifested and proved by writing was signed by Friedberg as required by the statute of frauds.

The decree dismissing the bill of complaint is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 12.