A narrative of the subject-matter of this cause may well be confined to a summary of the principal facts.
On January 2d 1920, one Margaret Leppert, the mother of the complainants, died intestate seized in fee-simple of premises identified as No. 128 Remsen Avenue, in the City of New Brunswick. She left her surviving as her heirs-at-law five children, named Eleanor, George, Burell, Margaret and Anna, all of whom were her co-occupants of the premises.
On February 12th, 1923, the eldest child, Eleanor, married Edward Nevius and on April 28th, 1926, she instituted a suit in this court to partition the property among the heirs. Burell, Margaret and Anna were then infants under the age of twenty-one, for whom a guardian ad litem was duly appointed. George, who was of full age, purchased the premises at the master's sale on September 7th, 1926, for $10,000. On September 21st, 1926, an order was made authorizing the master to make the designated distributions of the proceeds of the sale to the several tenants in common. All in due course received, and have ever since retained, their monetary shares amounting to $2,778.73 each. *Page 207 
George and his sisters other than Mrs. Nevius thereafter continued for a period of time to reside in the premises. It is significant to note that Burell became of age on October 12th, 1926, Margaret on September 2d 1928, and Anna on October 24th, 1932. George thereafter married and established a separate residence for himself and wife at another location. Burell, Margaret and Anna have continued to occupy an apartment in the Remsen Avenue property.
On June 3d 1946, George died intestate. His wife and an infant son, now seven years of age, survive. Those are the cardinal events constituting the background of the present litigation.
Concisely stated, the complainants, Burell, Margaret and Anna, now allege that their brother purchased their respective estates in the premises in trust for them, and they seek a decree obliging the defendants to restore to them their respective interests upon payment by the complainants of such amount as may be determined to be due from them.
The undertaking to establish an express trust solely by proof of the oral declarations of their deceased brother is futile.R.S. 25:1-3, N.J.S.A.; Willig v. Friedberg, 108 N.J. Eq. 17;153 Atl. Rep. 535.
This court has, however, adopted the principle that a tenant in common in possession and enjoyment of a common property occupies a confidential relation to his co-tenants and because of this relation, there is an implied obligation on his part to sustain and protect the common title. And so, subject to certain qualifications to which I shall presently refer, the rule has been recognized that "if a co-tenant in possession of common property purchases that property, either directly or indirectly, at a sale under foreclosure of a mortgage or deed of trust, the purchase will be deemed to have been made for the benefit of all of the co-tenants."
The qualifications of the general rule are that such confidential relation exists as a creature of law only where the co-tenants hold under the same instrument or, as here, under the same devolution of title, or are in joint possession; and provided also that "the other co-tenants elect within a reasonable time so to consider the purchase and offer to contribute *Page 208 
their respective proportions of the purchase price." Informative decisions are those in Breitman v. Jaehnal, 99 N.J. Eq. 243;132 Atl. Rep. 291; affirmed, 100 N.J. Eq. 559;135 Atl. Rep. 915; Brant v. Nugent, 100 N.J. Eq. 396; 135 Atl. Rep. 780;Mosher v. Van Buskirk, 104 N.J. Eq. 89; 144 Atl. Rep. 446;McIntyre v. Davis, 106 N.J. Law 485; 146 Atl. Rep. 186.
Whether the aforementioned implication of the trust relation is applicable to a tenant in common who without concealment or deception purchases at a partition sale (4 Thompson on RealProperty (ed. of 1940), § 1860), and is confined only to instances where the co-tenant acquires a so-called adverse title (2 Tiffany, Law of Real Property (3d ed.), § 465) are points which I do not find it necessary to discuss in the determination of the present cause. Cf. Brant v. Nugent,supra; Mosher v. Van Buskirk, supra.
The complainants have permitted their alleged rights to gather too much of the dust of time. Inordinate delay in the assertion of alleged rights reflects doubt upon their substantiality. In the circumstances of a case of this nature and purpose, the complainants upon attaining full age were required to act with reasonable promptness and diligence. Mr. Justice Brewer inHalstead v. Grinnan, 152 U.S. 412; 38 L.Ed. 495;14 S.Ct. 641, sired the familiar quotation which seems to me to have immediate relevancy: "The defense (of laches) itself is one which, wisely administered, is of great public utility, in that it prevents the breaking up of relations and situations long acquiesced in, and thus induces confidence in the stability of what is, and a willingness to improve property in possession; and at the same time it certainly works in furtherance of justice, for so strong is the desire of every man to have the full enjoyment of all that is his, that, when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge and yet has never attempted to enforce them, there is a strong persuasion that, if all the facts were known, it would be found that his alleged rights either never existed, or had long since ceased." *Page 209 
The eldest of the complainants became of age approximately 20 years before the institution of this cause; the youngest, 14 years prior thereto. George admittedly purchased the property with his own funds, maintained it, and supported the complainants there until his death. During the two years before his death the complainants, some of whom became remuneratively employed, resolved to contribute to him $20 a month in consideration of their occupancy of the premises and his donations for their support. After his death and until the inauguration of this proceeding, they have paid rent to their brother's widow. It is acknowledged that the complainants received their proportionate shares of the net proceeds of the partition sale and never until the inception of this suit signified their desire to reimburse their brother for his outlay in acquiring the property.
I am unable in the light of the course of conduct of these parties and the incidental circumstances, either to infer or imply that any of the complainants heretofore supposed that they continued to retain their former estates in the property.
In any event, their postponement of their claims which has enabled them to escape the costs of maintaining the property, and the obligation to reimburse their brother for their share of his expenditure and, moreover, to receive his current benefactions, with knowledge of his marriage and the birth of his son, constitutes a heedless supineness manifestly inconsistent with their present aspirations.
The rising market has now brought into focus the desirable recapture of many estates lost or abandoned in the days of yore.
In conformity with my conclusion, I shall advise a dismissal of the bill. *Page 210