723 A.2d 137 (1999)
318 N.J. Super. 228
Bridgett Podeszwa BURBACH, and Theodore F. Beck, Plaintiffs-Appellants,
v.
SUSSEX COUNTY MUNICIPAL UTILITIES AUTHORITY, Public Body Corporate of the State of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1999
Decided February 17, 1999
*138 Kron & Correale, Succasunna, for plaintiffs-appellants (Larry I. Kron, on the brief).
Fitzgibbons & Goovaerts, Franklin, for defendant-respondent (William F. Fitzgibbons, of counsel and on the brief).
Before Judges PRESSLER, KLEINER and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The single and narrow question raised by this appeal is whether a non-debtor tenant in common is entitled to notice, pursuant to R. 4:65-2, of an execution sale to enforce a judgment against a debtor co-tenant. We answer this question in the affirmative and accordingly reverse the judgment below denying relief to the unnoticed, non-debtor tenant in common.
The facts are not in substantial dispute. In 1973, plaintiff Theodore F. Beck and Harold Burbach took title as tenants in common to a seventy-three acre tract in Sussex County by a duly recorded deed from their common grantors, Henry and Mabel Tuttle. The consideration stated in the deed was $72,500. By duly recorded deed dated October 3, 1991, Harold Burbach conveyed his interest in the tract to his wife, plaintiff Bridgett Podeszwa Burbach. The 1991 deed recited the 1973 deed and specified that the subject of the 1991 conveyance was the grantor's undivided one-half interest as a tenant in common. Following the 1991 conveyance, the municipal tax rolls showed both Bridgett Burbach and Beck as owners of the tract.
*139 Thereafter, defendant Sussex County Municipal Utilities Authority (SCMUA) obtained a default judgment of about $15,000 against both Harold Burbach and Bridgett Burbach, individually, and against their corporation for unpaid utility charges. Plaintiff Beck is a stranger to that debt.
SCMUA obtained a writ of execution against the Burbachs and directed the Sheriff to conduct an execution sale of Bridgett Burbach's interest in the tract. Appropriate notice was mailed to her and Henry Burbach by certified mail. There was one posting on the property. SCMUA was, however, unaware of Beck's interest in the property, and it is undisputed that no notice was ever served upon him. The Sheriff's sale was conducted on July 28, 1997, and SCMUA was the successful bidder for a nominal sum. A duly recorded Sheriff's deed to SCMUA, dated August 7, 1997, showed an actual consideration of $100.
The record does not indicate precisely how or when Beck obtained notice that the execution sale had taken place, but it appears that he learned of it as a result of SCMUA's subsequent advertisement of its proposed public sale of the tract. In any event, the record does include a letter dated December 11, 1997, from the plaintiffs' lawyer to SCMUA's lawyer confirming their recent telephone conversation in which plaintiffs' lawyer advised SCMUA of Beck's one-half undivided interest in the property, of the fact that Beck had not been served with notice of the execution sale, and of the contention by Beck that the sale was therefore void. Plaintiffs' lawyer further offered, on behalf of Mrs. Burbach, to pay the full amount due SCMUA on its judgment in exchange for a reconveyance to her of her undivided one-half interest. Finally, the letter confirmed SCMUA's undertaking to adjourn the public sale of the property that it had scheduled for December 18, 1997. This is the relevant portion of the response by SCMUA's lawyer by letter dated January 12, 1998:
However, based upon the additional knowledge that was obtained prior to January 12, 1998, ownership interest of Theodore Beck, it has been determined necessary or at least appropriate to re-advertise the resolution authorizing sale so as to indicate the ownership interest of the Burbach family that was in fact the subject matter of the original Sheriff's sale.
With reference to the Authority's intentions based upon the ownership interest of Mr. Beck, same is to the effect that the sale will proceed with the minimum bid remaining at $50,000.00.
We understand this letter to constitute an admission by SCMUA that it had been previously unaware of Beck's interest in the property and that it had, therefore, not attempted to notice him of the execution sale.[1] We also read the letter as taking the firm position that SCMUA intended, nevertheless, to assert the validity of the title it had obtained from the Sheriff rather than pursuing any of the other remedial options available to it.
The verified complaint that commenced this proceeding was promptly thereafter filed. Beck asserted therein that he had received no notice at all, and Mrs. Burbach asserted that she could not recall having received notice. Both claimed that they would be irreparably damaged if the public sale scheduled by SCMUA for January 26, 1998, were to take place. An order to show cause was signed on January 23, 1998, temporarily restraining the sale and directing SCMUA to show cause why the Sheriff's deed should not be set aside. The matter was argued on March 4, 1998, and resulted in a final judgment entered on that date, dissolving the restraint and dismissing the complaint. *140 The basis of the judge's decision was that an execution sale of the undivided interest of one tenant in common does not divest the other tenant in common of his interest, and hence the non-judgment debtor tenant in common is not entitled to notice of the sale under either R. 4:65-2 or the due process clause of either the state or federal constitution. The judge thus construed R. 4:65-2
simply [to] provide notice of a foreclosure sale of property to those parties who stand to be divested of their rights in that property as a result thereof. Beck, as a tenant in common, is clearly not such a party, and therefore, was not entitled to personal notice.
We think it clear that the judge erred.
Prior to its amendment effective September 1, 1994, R. 4:65-2 had required mailed notice of execution and foreclosure sales only to "each party who has appeared in the action or served a pleading and to the record owner of the property as of the date of the commencement of the action whether or not he has appeared in the action." In New Brunswick Sav. Bank v. Markouski 123 N.J. 402, 587 A.2d 1265 (1991), the Supreme Court, in the context of judgment liens, recognized the constitutional inadequacy of the defined class of persons entitled to notice. Relying on the principles articulated by Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L. Ed. 865 (1950) and Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court held that readily identifiable holders of property interests adversely affected by the sale are entitled to actual notice thereof. New Brunswick Sav. Bank v. Markouski, supra, 123 N.J. at 426, 587 A.2d 1265. The Court thus not only afforded relief to the unnoticed judgment lienors there, but also requested that the Civil Practice Committee recommend an amendment of R. 4:65-2 consistent with its opinion. Id.
The amendment of R. 4:65-2, effective September 1, 1994, ensued. The 1994 amendment more broadly defines the persons entitled to actual notice by registered or certified mail by specifying three classes of such persons, namely:
(1) every party who has appeared in the action giving rise to the order or writ and (2) the owner of record of the property as of the date of commencement of the action whether or not appearing in the action, and (3) except in mortgage foreclosure actions, every other person having an ownership or lien interest that is to be divested by the sale and is recorded in the office of the Superior Court Clerk, the United States District Court Clerk or the county recording officer.
We recite this history because of its demonstration of the judicial commitment to assuring the due process rights of persons whose property interests are subject to adverse consequences as a result of litigation to which they are not parties. We need not, however, rely on it or on the conforming 1994 amendment of R. 4:65-2. That is so because the rule has always required notice to the record owner of the property in question whether or not a party to the litigation resulting in the execution sale. We think it plain, moreover, that the non-debtor tenant in common is an owner of record within the intendment of the rule and therefore entitled to actual notice.
A tenant in common, by definition has an undivided interest in the whole, that is, an interest that encompasses the entire property. As explained by 4 Thompson, Real Property § 1795 (1979):
Each tenant in common has a separate and distinct freehold title. Each holds his title and interest independently of the others. His interest therefor can be transferred, devised or encumbered separately and without consent of the other cotenants. Other than the unity of possession each tenant in common holds the same rights as does an owner in severalty. The possessory rights of tenants in common are not, however, separate and distinct from each other. Possession is but a single unity. The interest of each cotenant is coextensive of the realty and extends to every part thereof.
[Footnotes omitted.]
Thus, the distinct title of each tenant in common, as a result of the undivided *141 nature of the interest, is subject to the coextensive possessory right to the whole of every other co-tenant. It is consequently virtually tautological that each co-tenant named in a recorded deed is a record owner of the property so held. Each is, therefore, entitled to notice of an execution sale pursuant to R. 4:65-2(2).
We further note that in construing the rule, the judge did not consider the record-owner notice requirement of R. 4:65-2(2), which we deem dispositive, but focused only on the "interest-divestment" catch-all of R. 4:65-2(3). In that regard, we understand that a tenant in common is free to alienate his interest in the property without the consent of any co-tenant. We also understand that a tenant in common is ordinarily free to compel partition. See generally Newman v. Chase, 70 N.J. 254, 260-265, 359 A.2d 474 (1976). But this does not mean that a tenant in common is not entitled to notice of an execution sale to enforce the separate obligation of a co-tenant. Aside from his right to notice as an owner of record, it is obvious that the interest of a tenant in common will, as a practical matter, be affected by the execution sale, particularly, where, as here, the tenants in common are not strangers to each other and have been functioning in the nature of a partnership under a common deed.[2] The consequences of an execution sale are that the remaining co-tenant has a stranger for a partner in title and runs a far greater risk of an involuntary partition that may well affect the value of the property as a whole and hence of his undivided interest therein. We regard these consequences as having "significantly affected" the property interest of the non-debtor tenant in common. See Mennonite, supra, 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187. This significant affecting of a property interest invokes the notice requirements of the rule despite the fact that, as a result of the sale, the tenant in common is not divested of his own definable title interest. Thus, while the nature of title does not permit the tenant in common to prevent the execution sale, the nature of his interest surely must accord him the right to know of the sale and the opportunity to bid. The loss of that opportunity here is particularly compelling since the judgment debt of SCMUA was only about $15,000, considerably less than a one-half interest was apparently worth.[3] While the record does not indicate whether or not Beck would have bid at least up to the amount of the SCMUA debt, it is apparently not at all unlikely that that would have been the case.
Having missed Beck's ownership in preparing for the execution sale, SCMUA now takes the position that notice to Beck was not required because even if Beck is a record owner, the rule requiring notice to the record owner is phrased in the singular. Hence, it argues its notice obligation was fulfilled by noticing any record owner. We regard this argument as entirely specious. It is a well settled and statutorily mandated statute of construction that words in the singular "shall be understood to include and to apply to several persons or parties as well as to 1 person or party...." N.J.S.A. 1:1-2. While the court rules do not expressly so provide, the applicability of this canon of construction is obvious. The phrase "record owner" as used by R. 4:65-2 patently includes every record owner of the property.
It is well settled that an execution sale conducted without actual notice to or by *142 a person entitled thereto must, in the absence of intervening equities, be set aside if the unnoticed party, as here, acts promptly upon learning of the sale. See New Brunswick Sav. Bank, supra, 123 N.J. at 427, 587 A.2d 1265. See also Orange Land Co. v. Bender, 96 N.J.Super. 158, 164, 232 A.2d 679 (App.Div.1967). Compare Jersey Shore S. & L. v. Edelstein, 219 N.J.Super. 664, 530 A.2d 1320 (Ch.Div.1987) (according second mortgagees a right of restitution against first mortgagees who failed to give them required notice of sale).
The final issue before us is the adequacy of the notice given to plaintiff Bridgett Burbach. Although the notice was not sent to the address listed on the tax rolls, there is no question from this record that the address to which the notice was sent was correct and adequate.
The order appealed from dismissing the complaint is reversed, and we remand to the Chancery Division for entry of an order setting aside the execution sale against plaintiff subject to such conditions as the court may equitably impose.
NOTES
[1] This reading of the letter is confirmed by an article that appeared in the Star Ledger on January 13, 1998, attached to plaintiffs' verified complaint. The article, appearing on the first page of the County News section, is headlined "Sussex finds land it wants to sell has a part owner," and its text reports that the originally scheduled auction by SCMUA had to be postponed "when the authority learned that half the tract was owned by Beck...." SCMUA's administrator was reported as refusing to blame either the title search company or SCMUA's lawyer for the "oversight" and was quoted as saying that "I don't know exactly how it occurred and I don't want to speculate." The administrator was also reported as explaining "that the problem came to light when Beck learned of the authority's plans for an auction and called and said he was a part-owner...."
[2] We understand that a fiduciary relationship between co-tenants has been held to exist only where they have taken under a common deed. See Colquhoun (Eliz.) Est. v. Colquhoun (Robt.) Est., 88 N.J. 558, 564, 443 A.2d 1045 (1982); Leppert v. Leppert, 141 N.J. Eq. 205, 207, 56 A.2d 568 (Ch.1948). We note, however, that Beck and Henry Burbach had originally so taken title in 1973. The conveyance from Mr. Burbach to Mrs. Burbach in 1991 substituting her for Beck's co-tenant may well have been intended by the parties not to affect the original fiduciary duty and partnership obligations imposed by the common deed.
[3] The Star Ledger article of January 13, 1998, had reported that the whole tract had been assessed at $231,000. While we recognize that the article does not constitute competent proof and that the assessed value does not necessarily equate with market value, it appears nevertheless that the aim of SCMUA was not to obtain satisfaction of the debt due it but also to enjoy a substantial windfall. This is further evidenced by SCMUA's fixing of a $50,000 minimum bid for the public sale of Burbach's one-half undivided interest.