MARY E. ANDRUS and her husband

*v.*

MATILDA VREELAND and others.

A conveyance of the fee to a mortgagee will not merge his mortgage, where such intention on his part does not exist, and no detriment to other encumbrancers is shown.

On bill to foreclose. On final hearing on pleadings and proofs.

*Mr. G. Ackerson, Jr.,* for complainant.

*Mr. S. R. Demarest, Jr.,* for defendant Matilda Vreeland.

THE CHANCELLOR.

The question presented for decision is, whether the mortgage of Mrs. Matilda Vreeland is, under the circumstances, merged by the conveyance of the mortgaged premises to her in fee. The mortgages on the property are : first, a mortgage held by Quackenbush, for $600 and interest; second, the mortgage held by Mrs. Vreeland, dated May 2d, 1870, for $1,000 and interest; third, the mortgage of the complainant, Mrs. Andrus, dated June 25th, 1874, for $2,500 and interest; and, last, a mortgage held by Gilliam Rutan, for $764.22 and interest, dated July 6th, 1874.

Peter B. Vreeland, the mortgagor, with his wife, in or about December, 1875, executed a deed of conveyance for the mortgaged premises to Mrs. Vreeland, she being then the holder of her mortgage. The complainants insist that the effect of this conveyance was to merge her mortgage. It appears clearly from the evidence that, although she assented to the conveyance, it was merely for the accommodation of her son, the mortgagor, and without any intention on her part to extinguish her mortgage. On the other hand, she swears that she never had or saw the deed; that

she did not pay for recording it, and that the first she knew of its existence was a notice of it among real estate transfers in the village newspaper. She swears that when her son spoke to her on the subject, she did not understand anything about the matter, nor what his intentions were; that he said it would be better for both him and her, and should cost her nothing, and that he said it would be better for her; but she says she did not understand why. She further swears that she never made any claim to the property under the deed; that it was never her intention to merge her mortgage, and that she thought her mortgage would not be affected by the conveyance to her.

Her son, the mortgagor, testifies that he spoke to her about taking the property; that he told her he wanted to sell it, and thought he could sell it better if it was in her name than if it was in his own; that she said she did not see how she could buy it, that she had no money; that he told her that that made no difference, that it would not cost anything; and that she said, "Well, if it will be of any benefit to you, I will do what I can." He says he had his own object, but did not tell her, and only told her that it would benefit him. He further testifies that the deed was already drawn when he had this conversation with her, but he does not know whether it was then signed or not; that she never saw the deed; that she paid nothing for the consideration of it, and that he paid for recording it. He further explicitly swears that when he spoke to her about taking the deed, he told her it "would not make any difference with her mortgage; that it would be all the same." Again, he says that he told her it would not interfere with her mortgage; that it would not cost her anything, and that it would make no difference with her mortgage. He further says that he did not say anything to her about the other mortgages which were on the property. He got the policy of insurance from Rutan, in order that an acknowledgment of notice of the conveyance might be written upon it, but she knew nothing of that transaction.

It appears that when the deed was executed, she occupied part of the property, at a rent of ten dollars a month, for which the mortgagor was to have credit on the mortgage, and that the same arrangement continued after the deed was made. It does not appear that she has had possession of any other part of the property.

The object of Peter B. Vreeland, in conveying the property to his mother, seems to have been to keep it away from his creditors, but she does not appear to have been aware of his design. Neither Mrs. Andrus nor Rutan has been in anywise prejudiced by the conveyance to her; nor will any injustice be done to either of them by maintaining the mortgage. There are no equities to be subserved by holding that the mortgage is extinguished. On the other hand, equity requires that it should be supported. A court of equity will keep an encumbrance alive or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the party. The intention, however, must be innocent, and injurious to no one. *Starr* v. *Ellis*, 6 *Johns. Ch.* 393; *Clos* v. *Boppe*, 8 *C. E. Gr.* 270.

Mrs. Vreeland's intention was to preserve her mortgage as an encumbrance upon the property, and she had no improper or injurious purpose in consenting to the conveyance to her. Her mortgage will be maintained.