Hendrickson v. Hendrickson.

---

Maria C. Hendrickson, appellant,

v.

Samuel T. Hendrickson et al., respondents.

1. In cases of implied trusts, relief is refused to parties who come into a court of equity after long acquiescence, and that not only in circumstances where the length of time would render it difficult to ascertain the true state of the fact, but also where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would originally have been given.

2. The complainant became entitled to an implied equitable interest in lands when she was six years old. Her brothers, thinking that they had a right to acquire her interest, on making provision to compensate her for it, then made such provision, and always thereafter treated the property as their own. The

complainant did not avail herself of the provision, but neither did she institute any proceedings to enforce her equitable claim until more than twenty years after she attained her majority, and became *sui juris.*—*Held,* that her claim was then, under all the circumstances, barred by lapse of time.

On appeal from a decree of the chancellor, whose opinion is reported in *Hendrickson* v. *Hendrickson, 14 Stew. Eq. 375.*

*Mr. Dennis McMahon* (of New York), for appellant.

*Mr. H. M. Nevius,* for respondents.

The opinion of the court was delivered by

DIXON, J.

On February 1st, 1849, Tobias S. Hendrickson, made a written contract to purchase the Globe Hotel property, in Red Bank, New Jersey, of which he was then a tenant, for the price of $3,000. On March 17th, 1849, he paid $420.36 on account of the purchase-money. By the terms of the contract, he was bound to pay $800 more, with interest, on April 1st, 1850, when he was to receive a conveyance, and give a bond and mortgage for the balance of the price. But on May 9th, 1849, he died intestate, leaving a widow and seven children, of whom two only, Samuel T. and James H., were of age, and the youngest, aged six years, was the present complainant. The widow and oldest son, Samuel, forthwith took out letters of administration on the decedent's estate, which consisted of the hotel furniture, then appraised at $581.65, good credits appraised at about $200, and his interest in the contract already mentioned, which was appraised at what he had paid upon it, $420.36. He left also a wood lot, worth less than $50. His indebtedness amounted to about $600, outside of the obligations of this contract. The adult members of the family, seeing that the decedent's estate was insufficient to complete the purchase, arranged among themselves that the two elder sons, Samuel and James, should take their father's interest under the contract, paying therefor to the estate what he had paid for it, and should also purchase the hotel

furniture at its appraised valuation. The chief incentive to this arrangement was that a home might be preserved for the widow and younger children in the hotel, where the two sons purposed to carry on the business in which their father had engaged, their mother agreeing to be housekeeper for them. This arrangement was carried out. The administrators charged themselves with the appraised value of the furniture and of the decedent's interest under the contract, the two sons paid the residue of the purchase-money, and on September 15th, 1850, took the title of the hotel property in their own names, and they continued the hotel business, their mother and her family residing with them until 1856.

On August 23d, 1884, the complainant filed her bill against her mother, her sister and her surviving brothers, including Samuel and James, praying a decree that Samuel and James hold title to the hotel property in trust for their father's widow and heirs, and that they shall convey to the complainant her share (now one-sixth), and shall account for all the net income, issues and profits therefrom from the death of their father until such conveyance be made.

It may be conceded that the complainant's claim, if seasonably made, would have been valid. By his contract to purchase, her father became, in equity, the owner of the hotel property, the equitable title to which descended, on his death, in part to the complainant. *Haughwout* v. *Murphy*, *7 C. E. Gr. 531; Palmer* v. *Morrison*, (*N. Y. Ct. of App.*) *6 Cent. Rep. 193.* This title was not divested by the family arrangement made during her infancy, and remained, notwithstanding the transfer of the legal title to her brothers, who knew all the facts on which her right rested. But, in saying this, all is said that can be in favor of the complainant's claim. Her right, though real, was of but little value, $60 or $70, and would be lost by the omission to do what she was plainly unable to do. Her brothers, on attempting to acquire it for themselves, acted in good faith, and from laudable motives, and were charged with its full value for her benefit. They thought they had become its legal and equitable owners, and, on that hypothesis, dealt with it for over thirty-five years. During

this period they purchased other lands, adjoining the original hotel property, which they incorporated with it as a single plant; they repaired, improved and enlarged the buildings, and they have carried on the hotel business there in a way that has given to the stand a value far beyond what it would have reached by the lapse of time. It is impracticable to separate the original premises from the present establishment, and it cannot be expected that the brothers would be able to render even an approximately accurate account of the repairs and betterments which they have made during so many years, the expense of which must be ascertained, in order to do justice between them and the complainant, if she is to be regarded as still holding her equitable estate. This condition of things has arisen without any actual culpability on the part of these brothers. Their purchase in 1849 was concurred in by all parties interested who were old enough to comprehend it, and they did not then conceal, nor have they since attempted to conceal any circumstance which affected its propriety. From that time to this, their possession of these premises has been open, notorious, exclusive and adverse to every claim that might be set up against it. On the other hand, the complainant asserted no claim, not only during her minority, but also during more than twenty years after it, while she was perfectly *sui juris*. So that had her estate been legal, as well as equitable, it would have been barred when she filed her bill. Under these circumstances, her application for relief comes too late.

The case she presents is one of implied constructive trust only. *3 Pom. Eq.* §§ *1030, 1044.* In cases of this nature, relief is refused to a party who comes into a court of equity after long acquiescence, and that not only in circumstances where the length of time would render it extremely difficult to ascertain the true state of the fact, but also where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would originally have been given upon the ground of constructive trust. *Beckford* v. *Wade, 17 Ves. 88, 97.* What that reasonable time is, within which a constructive trust can be enforced, depends on the circumstances of the case. Generally

speaking, where a party has been guilty of such laches in prosecuting his equitable title as would bar him if his title were solely at law, he will be barred in equity, from a wise consideration of the paramount importance of quieting men's titles, and upon the principle, " *Expedit reipublicæ ut sit finis litium;*" and there can be few cases where relief will be granted after twenty years' peaceable possession by the person who claims in his own right, but whose acts have made him a trustee by implication. · *Boone* · v. *Chiles, 10 Pet. 177, 223 ; Michoud* v. *Girod, 4 How.* (*U. S.*) *503, 561 ; Dean* v. *Dean, 1 Stock. 425.*

In the present case, the smallness of the complainant's original interest, the difficulties that must attend any attempt to trace it equitably through the intervening years, the danger that such an attempt would result in great injustice to the defendants, the fact that they made provision for fair compensation·to her, and their conspicuous good faith in the transaction, make it clear that the relief prayed for in this bill ought not now to be afforded. .

The chancellor's decree dismissing the bill should be affirmed.

For affirmance — The Chief-Justice, Depue, Dixon, Knapp, Magie, Parker, Reed, Scudder, Van Syckel, Brown, Clement, Cole, McGregor, Whitaker—14.

For reversal—Paterson—1.