MELFORD N. ROLL et al., executors, respondents,

*v.*

ABRAHAM EVERETT et al., appellants.

[Argued January 9th, 1908. Decided November 16th, 1908.]

1. Secondary evidence of documents out of the jurisdiction of the court is not admissible merely upon proof of that fact, even though the documents are the papers of a third party not interested in the pending controversy.

2. Where one tenant in common acquires a tax title or redeems land from a tax sale, his act inures to the benefit of his co-tenants upon their reimbursing him for their proportionate share of the amount paid by him.

3. A tenant in common who discharges a lien upon the common property, has a right to contribution from his co-tenant, and as security is entitled to a lien upon his co-tenant's share of the property. The lien may be enforced in equity by treating the tax deed as valid and subsisting for that purpose.

4. A tenant in common who has been disseized is not entitled to partition, but to prevent a tenant in common from having partition there must be an actual ouster.

---

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *72 N. J. Eq. (2 Buch.) 20.*

Mr. *Alan H. Strong,* for the appellants.

Mr. *Frederick M. P. Pearce,* for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

This was a bill for partition. The property was conveyed by one Cotheal to Mary Jane Roll and Sarah E. Dey by deed, dated April 16th, 1874, which purported to convey three tracts of land, including the land now in question. The complainants are the successors in title of Mary J. Roll, but it is unnecessary to state in detail the devolution of title to the share claimed by them. Sarah E. Dey's share was conveyed by the sheriff in 1877 to Ward C. Perrine and Abraham Everett, who subsequently acquired a tax title.

The first difficulty in the case arises out of the following clause in the deed:

"It is agreed by and between the parties to these presents, that this indenture shall not conflict with the title of any part of the aforesaid premises previously sold and conveyed by said Alexander I. Cotheal and James D. Thomas, to any party or parties, and this deed is subject to any such conveyances."

The defendants contend that the property in question had been conveyed by Cotheal and Thomas in 1835 to Peter G. Taylor, and that therefore no title passed by the deed to Roll and Dey. They also claim a title paramount to the complainant by virtue of a tax deed from the collector of taxes, dated June 4th, 1877, to Ward C. Perrine and Abraham Everett. The interest of Everett under this tax deed was conveyed after his death by commissioners appointed in partition proceedings to Ward C. Perrine, George L. Everett and John R. Everett. The share of George L. Everett subsequently passed by his will to his sons Abraham and William C., two of the defendants. The share of Ward C. Perrine subsequently passed by his will to other defendants.

The proof offered of the alleged conveyance from Cotheal and Thomas to Taylor consisted of copies of books of account of Cotheal and Thomas, as trustees, containing record of sales of lots, part of the tracts in question. It was the same proof that was resorted to in the case of *Roll* v. *Rea, 50 N. J. Law (21*

*Vr.*) *264*, and there held sufficient to carry the case to the jury. This ruling was subsequently approved by this court in *Roll* v. *Rea, 57 N. J. Law (28 Vr.) 647*. In that case, however, the copies taken from the trustees' books had been introduced by consent, and the question presented was whether such a reasonable search had been made for the deed to Lary, which was the one there in question, that secondary evidence of its contents was permissible. In the present case the defendants seek to go further, and, without having the consent of their adversaries, they seek to prove the existence of a similar deed to Taylor, not by the secondary evidence of the original books of the trustees, but by a copy of that secondary evidence. If we assume that the books themselves would be admissible evidence, it does not follow that a copy thereof is admissible, because they are out of our jurisdiction. On this question the authorities are at variance. In the last edition of *Greenleaf on Evidence* § *563e,* and in *Wigmore on Evidence* § *1213,* cases are cited on either side. Thus, in *Boyle* v. *Wiseman, 10 Exch. 647*, it was held that the contents of a letter written by Cardinal Wiseman and in the possession of a resident of France, which was alleged by the plaintiff to be libelous, could not be proved by secondary evidence, merely because the person who had possession of it was beyond the jurisdiction of the court, and had refused to deliver it up at the request of a third person, who did not disclose the purpose for which it was wanted; and in *Turner* v. *Yates, 16 How. 14,* secondary evidence of an invoice, which was presumed to have been sent to London, was rejected, upon the ground that the deposition of the party in London, having possession in that way, should have been taken, or some proper attempt made to obtain it. On the other hand, in *Bruce* v. *Nicolopulo, 11 Exch. 129,* where it became necessary to prove that the failure to load a vessel in accordance with a charter party was due to the restraint of princes, it was held that evidence of the contents of printed placards purporting to be signed by Prince Gortschakoff and posted at a Black sea port, was admissible; and in *Burton* v. *Driggs, 20 Wall. 125,* the court in Vermont admitted secondary evidence of the contents of the books of a bank in New York state. Although in the opinion in this case it was said that the

books, being out of the state and beyond the ·jurisdiction of the
court, secondary evidence to prove their contents was admissible,
it must be noted that the plaintiff had endeavored to obtain them
for use on the trial, and that the custodian refused to permit
them to go, and the deposition of the cashiers of the bank dur-
ing the period covered by the controversy was taken. We think
it would be quite unsafe, in view of the grounds·upon which the
rule forbidding the introduction of secondary evidence rests, to
lay it down broadly that secondary evidence of documents out
of the jurisdiction of the court is admissible when that fact
alone appears, even though the documents are the papers of a
third party not interested in the pending controversy. It ought
at least to appear that some effort had been made to secure the
original documents. We are not prepared to say that such an
effort ought not to include the taking of depositions within the
foreign jurisdiction. In the present case the defendants did
nothing to secure the original documents and contented them-
selves with proving the death of Cotheal, and the fact that he
had resided outside of the jurisdiction of New Jersey. No effort
seems to have been made to ascertain whether the documents
were still in existence, and, if so, in whose custody they were to
be found. We think, therefore, that the vice-chancellor was
quite right in disregarding the claim of the defendants that
the title to the land in question was in Taylor.

With reference to the tax title, the ·vice-chancellor held, upon
an examination of the tax deed, that it was void because it failed
to comply with the law then in force; but he felt constrained by
our decision in *Slockbower* v. *Kanouse,* *50 N. J. Eq.* (*5 Dick.*)
*481,* not to ·determine that question, regarding it as a question of
pure· law. He, therefore, held the case to enable the defendants
to establish their title· under that deed, and required them to
take proceedings for that purpose within thirty days. Upon
their failure to take such proceedings, he advised a decree that·
the premises described in the· bill are· free and clear of any· lien·
or encumbrance under and by virtue of the tax deed.

·We do: not find ·it·necessary to· determine whether the court
of chancery had· the right to impose upon the defendants in a
partition suit the burden of establishing a· title adverse to that

of the complainant. That question was not involved in the case. At the time the tax title was acquired, Ward C. Perrine and Abraham Everett were tenants in common with Mrs. Roll, by virtue of the sheriff's deed conveying the Dey title to them. The law is well settled that where one tenant in common acquires a tax title or redeems land from a tax sale, his act inures to the benefit of his co-tenant upon their reimbursing him for their proportionate share of the amount paid by him. The principle is in some of the cases put upon the ground of a confidential relationship between the tenants in common. *1 Lead. Cas. Eq. (4th Am. ed.) 68.* Other cases rest the doctrine upon the principle that one cannot be allowed to acquire a right by his own default. This principle would be violated if a tenant in common, who is equally obligated to pay all the taxes upon the joint property, were allowed to acquire rights superior to his co-tenant by defaulting in his obligation, and forcing the public authorities to take proceedings for the collection of the tax. Other cases seem to rest the doctrine upon the view that one who has title to land cannot acquire a superior title by means of a tax deed. In the view of these cases, the acquisition of the tax title amounts to nothing more than a redemption of the purchaser's own land from a lien.

The cases are carefully stated by Mr. Justice Holmes, in *Hurley* v. *Hurley, 148 Mass. 444; 19 N. E. Rep. 545.* The rule has been held applicable where the tenant in common became such after the tax title was acquired. *DuBois* v. *Campau, 24 Mich. 360.* *Flinn* v. *McKinley, 44 Iowa 68,* a case where one tenant in common had become the assignee of a tax certificate, and afterwards became a tenant in common before he received the tax deed; and to cases where the tenant in common had acquired the tax title from a third person, who had purchased at the tax sale. *Lloyd* v. *Lynch, 28 Pa. St. 419-423.*

The extent to which the courts go is well illustrated by *Burns* v. *Byrne, 45 Iowa 285; Busch* v. *Huston, 75 Ill. 343; Chace* v. *Durfee (R. I.), 16 R. I. 248; 14 All. Rep. 919,* where it was held that a purchase by the husband of a tenant in common would inure to the benefit of all the co-tenants of the wife. The

cases are collected in a note to *Hoyt* v. *Lightbody, 8 Ann. Cas. 984; 98 Minn. 189.*

In the present case the taxes were assessed prior to the acquisition of title by Perrine and Everett under the sheriff's deed. If the lien of the municipality for the taxes had not then expired, Perrine and Everett could only secure the release of their undivided interest by payment of the whole tax, and in making such payment were only discharging their obligation to the public on account of their land. Upon the principles above stated they could not acquire any title to the land against their co-tenant by their own default. If, however, the lien had then expired, the collector of taxes was without power, and the tax deed conveyed no title.

The right of a tenant in common who discharges a lien upon the common property, is to contribution from his co-tenant, and as security he is entitled to a lien upon his co-tenant's share of the property. That lien may be enforced in equity by treating the tax deed as valid and subsisting for that purpose; and in *Hurley* v. *Hurley* it was held that until the amount had been paid the co-tenant had no right to the possession of any part of the land, in equity or at law; it was accordingly held in that case that the petition for partition was rightly dismissed. In the *Hurley Case,* however, the tenant who had paid the taxes actually took possession of the property. In the present case the land is unoccupied land, of which neither complainants nor defendants have the actual possession. At common law a tenant in common who had been disseized could not have the writ of partition; and the reason is that given by *Co. Litt. 167,* in discussing the right of partition as between coparceners: "They no longer hold the estate together." But, in order to prevent one tenant in common from having a partition, there must be an actual ouster. In the absence of such ouster the ordinary rule prevails that the possession of one tenant in common is the possession of all. *Foulke* v. *Bond, 41 N. J. Law (12 Vr.) 527.*

The fact that the statute authorizing the sale of land for taxes as it existed when the tax deed was made (*Gen. Stat. p. 3351 pl. 322*) authorized the purchaser at the tax sale to hold and enjoy real estate during the term for which he purchased the

same, does not prevent the operation of this rule. The tax deed inures to the benefit of all tenants in common; and if kept alive at all, is only kept alive in equity for the purpose of enforcing the right to contribution. Such right is no bar to a bill in equity for partition.

The result is that we reach the same conclusion reached by the vice-chancellor, except so far. as he decreed that the premises were free and clear of any lien or any encumbrance, under or by virtue of the tax deed. In this respect the decree is erroneous and must be reversed, and the record remitted to the court of chancery, and a decree entered for partition, which shall provide that the defendants have a lien upon the complainants' share for the proportionate part of the taxes upon the property in question paid by the defendants or their predecessors in title, with interest from the date of payment. This will necessitate the taking of further proofs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, VROOM—3.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, BOGERT, GREEN, GRAY, DILL—9.