The bill in this cause is filed by the complainant against the defendant to have it declared that the defendant holds a one-half interest in the premises described in the bill, in trust (implied) for the complainant, and prays that the defendant make a conveyance to her of such interest.
The facts are as follows: Michael Egan, the father of complainant, died in 1888, leaving his last will and testament, in which he devised to the complainant and to his son, Thomas Egan, the premises now known as 135 Armstrong avenue, Jersey City, as tenants in common. He left other children who are not included in this devise. The complainant and Thomas and other of the children resided in the home, and after the defendant married Thomas she came to live there. The property being in arrears for taxes, the city collector of Jersey City sold the premises to the defendant on the 8th day of October, 1895, and she paid for the same with her own moneys. On the morning of the sale the defendant told the complainant that she was going down to the tax sale, and asked the complainant to mind her baby. At the tax sale were a sister of the complainant and other persons. When the defendant came home from the sale she threw the tax receipt or certificate on the table and the complainant picked it up and asked why Tom's name was not on the paper, and the defendant said that she had bought it for herself. This is testified, on the part of the complainant, by Mary J. Egan, a sister-in-law of the complainant, and the defendant testified substantially to the same effect. She also says that she told her husband that she had bought the property for herself. An old neighbor of the parties says that the complainant, when she was leaving the home, said that she was sorry she lost her home, and had to leave it, c. *Page 489 
I may add that it is quite evident that all of the witnesses desired to tell the truth, but the long time elapsed made it well-nigh impossible for them to testify with reasonable certainty.
The complainant and the others (except the defendant and her husband) moved from the house some five or six years after defendant received her deed for the property. The answer alleges that they moved in 1903. It is not clearly proven when they actually left.
The defendant continued in open and hostile possession, paying the taxes and treating the property as her own. On June 1st, 1903, she made a mortgage for $500 to Reuben Simpson et al., trustees, which was duly recorded June 2d 1903, and canceled of record July 3d 1908. On June 2d 1908, she made another mortgage, dated June 4th, 1908, acknowledged July 2d 1908, and recorded July 3d 1908, to the Greenville United Building and Loan Association for $1,430, payable in installments on the building loan plan. This mortgage was canceled of record on November 25th, 1913. The moneys received on the first mortgage were used to pay off the taxes, c. The moneys from the second mortgage were used to pay taxes and for alterations, improvements, repairs, and, apparently, to pay off the first mortgage.
Afterwards the complainant had an apoplectic stroke; some witnesses for the complainant place it at fifteen or eighteen years ago, and they say that she had another stroke ten or twelve years ago. Some say that her first stroke was around ten or twelve years ago. But, in any event, her mind does not appear to have been affected after the first stroke, and it is not clear that she was sufficiently affected after the second stroke as to render her mentally incompetent. But if we take the longest period from the sale in 1895 to the date of her first stroke (fifteen or eighteen years) from eleven to fourteen years had elapsed from the date of sale. If, however, we fix the period of the stroke from ten to twelve years ago, from seventeen to nineteen years elapsed before beginning suit. Here, again, the great uncertainty of the witnesses in fixing the period of either stroke renders it difficult *Page 490 
to determine within reasonable time when either occurred. A physician was called by the complainant who testified that he had treated her for three years — that is, from about 1922 to 1925 — during all of which time she was non compos mentis; but he could not state, in his opinion, how long before that period she was in that condition. No other physician was called, who treated her prior thereto, to testify.
Thomas (the husband of the defendant), the other tenant in common, died in October, 1923. The defendant made a contract to sell the property in 1924, and spoke to Mary Jane Egan, the wife of John, a brother of complainant, about the sale; and shortly thereafter this bill was filed, some twenty-nine years after the defendant's purchase at the tax sale, and twenty-eight years after she received the deed, during all which time, with full knowledge of the facts, neither the complainant nor any of her relatives asserted that the complainant had any interest in the property.
The first point made by the complainant is that a confidential relation exists between the husband and wife, and when the wife bought this property at the tax sale she became a trustee for the benefit of her husband and the complainant as tenants in common, and, therefore, she is bound to convey the one-half interest to the complainant, and account for the rents, c. And complainant argues that, as the husband would become a trustee if he bought at a tax sale of his wife's property, the same doctrine would apply to the wife.
It is elementary that if one tenant in common acquires a tax title, or redeems land from a tax sale, his act inures to the benefit of all his co-tenants upon their reimbursing him for their proportionate share of the amount paid by him, and, until such payment is made, he has a lien upon his co-tenant's share.Roll v. Everett, 73 N.J. Eq. 697, 701.
In Laton v. Balcom, 64 N.H. 93; 10 Am. St. Rep. 381, the defendant purchased the property at a tax sale. At that time his wife held a mortgage on the premises, and afterwards obtained judgment on the same, which was paid by the plaintiff, who took a release from the wife. The court held that the husband could not acquire a tax title to the premises as *Page 491 
against his wife. The court said: "To preclude a person from acquiring a valid tax title he must be under some legal or moral obligation to pay the tax, or there must be something in his contract or fiduciary relation to the owner of the property which renders it inequitable, as between them, that he should acquire the title," and held that the defendant was precluded from becoming a purchaser for his own benefit as against his wife. The court further said: "The obligations and duties of husbands and wives to each other, both express and implied, create such relations of trust and confidence between them that neither can acquire the other's property by a clandestine payment of taxes."
To the same effect are Burns v. Bryne, 45 Iowa 285, andChristy v. Fisher, 58 Cal. 256.
As opposed to these cases is Willard v. Ames, 130 Ind. 351;30 N.E. Rep. 210, where it is said: "It seems to be the settled law that a husband, whose duty it is to look after the business interests of his wife and family, as well as to support them, will not be permitted to acquire title to the property of his wife by purchase at a tax sale; but we know of no law to prevent a wife from purchasing, at a public sale, the lands of her husband * * * provided the purchase is made upon her own account and with her own money. The wife is under no obligation, legal or moral, to pay the taxes on her husband's property."
In the instant case the complainant and the husband of the defendant were tenants in common, holding by several and distinct titles, the only unity recognized between them being that of possession. See Bouv. Dict., tit. "Tenants in Common." When the defendant purchased at the tax sale she purchased the several estates of the complainant and her husband. The complainant here, recognizing the character of her estate, filed her bill praying that the one-half only be conveyed to her, upon which theory she has not made the heirs and devisees of the husband parties to the suit. It cannot be said that she, in her own right, as to her half interest, could maintain the bill, as the sale to the defendant was valid as to her, and the complainant's right to redeem *Page 492 
was cut off. But she urges that, because the husband had a right to sue as tenant in common, she, through him, was invested with the same right, and, also, that as equity excused the husband from suing during the continuance of the marital relation, she also was excused for the same period. Conceding, for the purpose of argument, and without determining that the same right to sue is preserved to the complainant that may have existed in the husband, the theory that she could sue at any time that the husband might, without being charged with laches, I cannot subscribe to. None of the reasons for not applying the doctrine of laches to the husband can apply to the complainant.
Even with the above concession, the complainant cannot prevail, because she is guilty of gross laches.
In the case of McCarton v. Traphagen, 43 N.J. Eq. 323, 338,
Vice-Chancellor Van Fleet said: "Courts of equity have, from the earliest times, upon general principles of their own, even where there was no analogous statutable bar, refused relief to stale demands. * * * The reason of the rule is apparent, and consists in the difficulty, and, in many cases, the impossibility, of ascertaining, after a great lapse of time, the facts necessary to enable the court to exercise its power with safety. He who delays asserting his rights, until the proofs respecting the transaction out of which he claims his rights arose, are so indeterminate and obscure, that it is impossible for the court to see whether what seems to be justice to him is not injustice to his adversary, should be denied all relief, for, by his laches, he has deprived the court of the power of ascertaining, with reasonable certainty, what the truth is, and thus of doing justice." See, also, Dyer v. Waters, 46 N.J. Eq. 484; Hendrickson v.Hendrickson, 42 N.J. Eq. 657; Coles v. Vanneman, 51 N.J. Eq. 323; Lutjen v. Lutjen, 64 N.J. Eq. 773, 783; Ten Broeck v.Jackson, 71 N.J. Eq. 582.
In Lutjen v. Lutjen, supra, the court deals with the periods which constitute laches, and says it applies even though the position of the defendant has not changed.
 I will advise a decree dismissing the bill. *Page 493