ESTATE OF ELIZABETH COLQUHOUN, PLAINTIFF-RESPON-DENT, v. ESTATE OF ROBERT G. COLQUHOUN, DEFEND-ANT-APPELLANT, AND ROBERT F. COLQUHOUN, DEFEND-ANT.

Argued November 30, 1981—Decided March 17, 1982.

*Michael J. Larkin* argued the cause for appellant.

*Stanley W. Kallmann* argued the cause for respondent (*Gennet and Kallmann*, attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

This case involves the status of a mortgage on real property owned by tenants by the entirety. The precise issue is what, if anything, is owed and by whom when one of the tenants receives the mortgage as a gift and subsequently dies.

On August 16, 1973, Robert G. Colquhoun and his wife, Elizabeth, purchased a house at 39 Oak Ridge Road, Basking Ridge, for $51,000. They moved into the home and continued to reside there until their respective deaths. The deed recited the grantees as Robert G. Colquhoun and Elizabeth Colquhoun, his wife, thus creating a tenancy by the entirety. See *Mosser v. Dolsay*, 132 *N.J.Eq.* 121 (Ch.1942). Robert F. Colquhoun, a son, advanced the necessary purchase money. The loan was evidenced by a bond and secured by a purchase money mortgage. Under the terms of the loan, $35,000 was to be repaid to the son on August 31, 1974. The $16,000 balance, with 6% interest, was to be repaid in equal monthly payments of $103.09 commencing

on October 1, 1974 until August 1998. Mr. and Mrs. Colquhoun, utilizing proceeds from the sale of their previous home at Lake Mohawk, paid the $35,000 due on August 31, 1974. A balance of $16,000 remained due under the mortgage.

On June 8, 1978, Robert F. Colquhoun assigned the mortgage to his father, Robert G. Colquhoun, individually. Though the assignment recited it was made "for a valuable consideration," the parties have agreed that the transfer was made as a gift. The assignment was recorded on June 9, 1978.

Robert G. Colquhoun died on October 14, 1978. In his will, he expressly disinherited his wife and their two sons, although he designated his older son, Robert F. Colquhoun, as executor. He bequeathed and devised his estate to his brothers and sisters in Scotland. At the request of his mother's attorney, Robert F. Colquhoun executed a partial release of the mortgage reflecting the fact that the $35,000 had been paid on August 31, 1974. This document was recorded on March 13, 1979. No monthly payments had ever been made on the $16,000 mortgage.

Elizabeth Colquhoun died on May 29, 1979. The primary beneficiary in her will, executed shortly before her husband's death, was her son, Owen Colquhoun. Her will expressed her intention that neither her husband nor her son Robert F. was to benefit from her estate. Owen, as executor of his mother's estate, contracted to sell the Basking Ridge property for $89,500. However, the sale could not be consummated because of the record existence of the mortgage. The father's estate demanded payment of the $16,000 unpaid principal amount of the mortgage plus accrued interest. The attorney for Mrs. Colquhoun's estate contended that her estate was liable for only $8,000 since "Mr. Colquhoun was a co-signer of the mortgage obligation." When agreement between the parties could not be reached, this action was instituted on behalf of Elizabeth Colquhoun's estate for an order compelling the executor of Robert G. Colquhoun's estate to release the recorded mortgage lien so the sale could be effectuated and also for a setoff of $8,000 against the claim of $16,000.

The trial court granted *pendente lite* relief by ordering that the mortgage be cancelled and funds covering the principal and interest be placed in escrow. Thereupon the real estate transaction was closed.

The trial court subsequently granted summary judgment in favor of the estate of Robert G. Colquhoun, concluding that Elizabeth Colquhoun's estate was liable for the $16,000 principal amount plus interest. It held that when Elizabeth Colquhoun became the sole owner of the property upon her husband's death, the property was encumbered by the $16,000 mortgage and therefore she was responsible for paying it in full. If she had used her funds to pay off the mortgage resulting in a benefit to her husband, she would have been entitled to contribution, but since she had not, no basis existed to compel his estate to make contribution.

The Appellate Division reversed. *Colquhoun's Estate v. Colquhoun's Estate*, 177 *N.J.Super.* 491 (1981). It reasoned that a confidential relationship existed between the co-owners of the property and that when one co-owner protects the common title, he does so for the benefit of all. Thus, when Robert G. Colquhoun received the mortgage, he did so for the benefit of his wife Elizabeth and himself. Accordingly, the mortgage merged with the title and Elizabeth's estate had no obligation with respect to the mortgage. We granted the petition for certification of the executor of the estate of Robert G. Colquhoun. 87 *N.J.* 362 (1981).

This is a classic example of a case in which competing legal principles may lead to different results. If the wife had died first, the husband as the surviving tenant would have become the sole owner of the property. The merger of the mortgage and deed would have been complete upon her death. *Portuguese v. Ziss*, 2 *N.J.Super.* 397, 400 (Ch.Div.1949) (merger occurs upon uniting greater and lesser estates in the *same* person unless intent to the contrary). Since the husband predeceased

the wife, the property remained encumbered with the $16,000 mortgage. No merger was possible because there was no identity of ownership of the mortgage and the fee. *See* 9 *Thompson on Real Property* § 4798 at 585 (1958) (merger is applicable whether the one estate is legal and the other equitable, provided they are of the entire interest). The proposition that the mortgage remained outstanding is arguably sound because it could be contended that Robert G. Colquhoun, as assignee, should have been entitled to demand payment of the mortgage in the same manner as his son if the mortgage had not been assigned. Moreover, if the son had retained the mortgage, his mother as surviving spouse would have had no right of exoneration from her husband's estate, at least as to the mortgage indebtedness due after his death. *In re Staiger*, 104 *N.J.Eq.* 149 (E. & A. 1929). *See* 5 *N.J. Practice (Clapp, Wills and Administration)* § 261 (3d ed. 1962) (discussing *N.J.S.A.* 3A:26–1).

 Yet, a different result may be reached by focusing on the obligations between tenants by the entirety. As between themselves, tenants by the entirety are tenants in common.[1] *Newman v. Chase*, 70 *N.J.* 254, 259 (1976) ("Each tenant by the entirety is a tenant in common with the other during the joint lives of the spouses."); *King v. Greene*, 30 *N.J.* 395, 412 (1959) (husband and wife hold as tenants in common for their joint lives). It is settled that a fiduciary relationship exists where cotenants hold under the same instrument, as here under a deed, or under the same devolution of title or are in joint possession. *Leppert v. Leppert*, 141 *N.J.Eq.* 205, 207 (Ch.1948); *Brant v. Nugent*, 100 *N.J.Eq.* 396 (Ch.1927) (where cotenants owned vacant land and were not in joint possession, and titles were

---

[1] Upon the death of a spouse, the survivor is the sole owner. This Court has refrained from rationalizing whether the full title springs from a right of survivorship or emanates directly from the original grant. *See Newman v. Chase*, 70 *N.J.* at 259–60 n.3.

acquired at different times, no relation of trust and confidence existed).[2]

 The fiduciary relationship implies a legal obligation to sustain and protect the common title. *Leppert,* 141 *N.J.Eq.* at 207. Thus, where one tenant in common acquires a tax title or redeems land from a tax sale, his act inures to the benefit of his cotenant when he is reimbursed for the proportionate share of the amount paid. *Roll v. Everett,* 73 *N.J.Eq.* 697, 701 (E. & A. 1908); *Egan v. Egan,* 98 *N.J.Eq.* 487, 490 (Ch.1925). This principle is equally applicable where the tenant purchases the property at a mortgage foreclosure sale. *Breitman v. Jaehnal,* 99 *N.J.Eq.* 243, 245 (Ch.1926), aff'd, 100 *N.J.Eq.* 559 (E. & A. 1927). *See Nobile v. Bartletta,* 109 *N.J.Eq.* 119 (E. & A. 1931) (where house owned by husband and wife as tenants by the entirety, wife entitled to reimbursement of one-half of mortgage payments (principal and interest) due prior to his death and paid by her). The cotenant must within a reasonable time contribute his respective proportion of the cost in order to share in the benefit. *Breitman v. Jaehnal,* 99 *N.J.Eq.* at 245–46; 4 *Thompson on Real Property* § 1807 at 208 (1979). *See Errico v. Scopollitti,* 131 *N.J.Eq.* 125, 128 (Ch.1942); *Weller v. Rolason,* 17 *N.J.Eq.* 13, 19 (Ch.1864).

Adhering to the general principle that the action of a tenant in common in preserving or benefiting the estate with respect to an adverse lien or claim against the property is deemed to be for the benefit of the cotenant, the Appellate Division concluded that the gift of the mortgage was to be shared. Since the husband had received the mortgage as a gift, he held it for

---

 [2]We find it unnecessary in the context of this case to decide whether a fiduciary relationship including characteristics of mutual trust and confidence exists between tenants in common who are not in joint possession or come into their cotenancy by different conveyances. *See generally* 4 *Thompson on Real Property* § 1801 (1979). It is arguable that if cotenants occupy antagonistic positions, such as when one claims the whole title to the exclusion of the others, the relation of trust and confidence on which the rule is based does not exist. 2 H. Tiffany, *Law of Real Property* § 464 at 289 (3d ed. 1939).

himself and, as a constructive trustee, for his wife. The court then concluded that the mortgage merged into the legal title and was extinguished.

In arriving at this conclusion, however, the Appellate Division overlooked the proposition that the intention of the parties generally determines whether two property interests will be legally merged.[3] *Weh v. Weh*, 63 *N.J.Super.* 238, 243–44 (App.Div.1960); *Camden Co. Welfare Board v. F.D.I.C.*, 1 *N.J. Super.* 532, 552 (Ch.Div.1948); *Dieckmann v. Walser*, 112 *N.J.Eq.* 46, 54 (Ch.1932), aff'd, 114 *N.J.Eq.* 382 (E. & A. 1933); *Andrus v. Vreeland*, 29 *N.J.Eq.* 394, 396 (Ch.1878) (in accordance with intent of the second mortgagee, conveyance of fee to her did not extinguish mortgage). As observed in *Gimbel v. Venino*, 135 *N.J.Eq.* 574, 576 (Ch.1944):

> Merger is largely a question of intention and stated generally the law is that when a mortgagee acquires the equity of redemption, the presumption is that he intends to extinguish his mortgage interest by merging it in the estate in fee. The presumption is rebuttable and will not prevail when it is clear that a merger was not intended, which intention may be expressly declared, or may appear from the particular equities of the case. [Citing *Tennenberger v. Sozio*, 101 *N.J.Eq.* 64 (Ch.1927); *Clos v. Boppe*, 23 *N.J.Eq.* 270 (Ch.1872)]

The intent as gleaned from this record indicates that Robert G. Colquhoun desired to keep the mortgage alive. His prompt recordation of the assignment of the mortgage is persuasive evidence of that intent and of his desire not to permit his wife to share in the gift. This finding accords with the general rule that "[a]n assignment of a mortgage to one of two tenants in common . . . does not discharge it." 9 *Thompson on Real Property* § 4798 at 593 (1958). The cotenant, of course, is not prejudiced for he may redeem by paying his proportion of the debt. *Bronner v. Walrath*, 208 *A.D.* 758, 202 *N.Y.S.* 577 (1924). Where there has been no foreclosure, the cotenant is

---

[3]At common law whenever two estates in the same land were united in ownership of the same person, the lesser estate was merged in the greater irrespective of intent of the parties. In equity it was a matter of intention. G. Keeton and L. Sheridan, *Equity* 193 (1969).

adequately protected by paying his proportionate share of the debt.

As noted above, the acquiring cotenant is normally compelled to permit the other cotenant to share in the benefit provided the other cotenant is willing to contribute his share within a reasonable time. *Breitman v. Jaehnal*, 99 *N.J.Eq.* at 245–46. Reasonable time is an elastic concept. 4 *Thompson on Real Property* § 1807 at 208 (1979). Although the assignment of the mortgage had been promptly recorded, Elizabeth was unaware of the transfer, at least until sometime after her husband's death on October 14, 1978. She died in the following May.[4] Under these circumstances, her estate's election, as expressed in the complaint, to contribute a proportionate share of the indebtedness was made within a reasonable time.

Underlying the diverse theories advocated by the parties are two policies, each of which is entitled to due consideration. One approach gives full recognition to the intent of Robert F. Colquhoun and his father. It is undisputed that the son intended to give and assign the mortgage to his father and his father alone. His father accepted the mortgage, promptly recorded the assignment and treated the mortgage as his own. If one were to give full effect to the donative intent of the son and father, neither the mother nor her estate would be entitled to the benefit of that gift.

Yet, a fiduciary relationship existed between Mr. and Mrs. Colquhoun with respect to their ownership interest in the property. The tenancy in common contains mutual duties along with the rights of co-ownership. In the case of a tenancy by the

---

[4]The dissent would terminate a cotenant's right to share in the cost of preserving and keeping the fee unimpaired upon the death of both cotenants. Such a rule could lead to unfair results. For example, if one cotenant redeemed land from a tax sale, and both cotenants died shortly thereafter, it would be inequitable to prevent the estate of the one cotenant from paying its share of the redemption cost and participating in the equity. Death of the cotenants does not extinguish the reason for the principle.

entirety, these duties are buttressed by the obligations of the cotenants to each other as husband and wife. See *Egan v. Egan*, 98 *N.J.Eq.* 487, 491 (Ch.1925) ("The obligations and duties of husbands and wives to each other, both express and implied, create such relations of trust and confidence between them that neither can acquire the other's property by a clandestine payment of taxes.") (quoting with approval *Laton v. Balcom*, 64 *N.H.* 92 (1886)). If the husband had purchased the outstanding $16,000 mortgage for $10,000, it would be fair to charge the wife for only half that cost, or $5,000. To assess her for half the principal amount due, $8,000, would be unconscionable, sanctioning as it were a profit by one tenant at the expense of his cotenant. The unusual factor in this case is the son's intent to make a gift to his father and not to his mother. To permit the mother or her estate to benefit from that gift conflicts with that intent.

▇▇ Justice Cardozo once wrote: "The goal of juridical effort is not logical synthesis but compromise." B. Cardozo, *The Paradoxes of Legal Science* 4 (1928). That principle is peculiarly applicable under the unusual circumstances here. We recognize that the intent of one cotenant to take sole ownership has been held to be irrelevant where he redeems land from a tax sale. *Roll v. Everett, supra; Egan v. Egan, supra.* In such circumstances, the other cotenant has a legal right to reimburse him for his proportionate share of the amount paid and retain his ownership share. This is so even if he intended otherwise. However, under the circumstances presented here, we conclude that the intent not to merge the fee and the mortgage should be given legal recognition. Thus, we believe the fair result is to recognize both the donative intent of the son and father and the fiduciary relationship between the tenants by the entirety by requiring that Elizabeth Colquhoun's estate reimburse her husband's estate for one-half of the principal, $8,000, plus interest due as of the date of his death. In this manner, the donative intent of the donor and recipient as well as the fiduciary

relationship of the husband and wife as cotenants are acknowledged.

The executor of Elizabeth Colquhoun's estate also contended before the Appellate Division that her estate was entitled to a setoff either of $8,000 because Mr. and Mrs. Colquhoun were jointly liable on the bond or of one-half of $5,101, the overdue payments on the mortgage at the time of his death. In view of our holding herein, it is not necessary to address these issues. We do note that the premises were sold for an amount greatly in excess of the mortgage indebtedness so that no deficiency was possible and that Mrs. Colquhoun had not made any payments on the mortgage prior to her husband's death.

The cause is remanded to the trial court for entry of a judgment in the sum of $8,000 and interest due thereon as of the date of Robert G. Colquhoun's death in favor of his estate.

PASHMAN, J., dissenting.

The estates of Robert G. Colquhoun and Elizabeth Colquhoun contest the status of a $16,000 mortgage, recorded in Robert's name before his death, on property which the deceased spouses had owned as tenants by the entirety. The majority finds here "a classic example of a case in which competing legal principles may lead to different results." After pondering the equities, the majority decides to split the difference, awarding Robert Colquhoun's estate one-half of the mortgage amount, $8,000, plus interest due as of the date of his death. On first sight, such a resolution appears to be a fair compromise between competing interests. Closer examination reveals, however, that while this result may be a compromise, it is far from fair. Therefore, I dissent.

Elizabeth Colquhoun and her husband, Robert, owned a home in Basking Ridge as tenants by the entirety. Their son held a $16,000 mortgage on the property which he assigned to his father, individually, in June 1978. Because Robert Colquhoun

predeceased his wife, Elizabeth Colquhoun's estate now owns the entire Basking Ridge property, which its executor has contracted to sell for $89,500. These facts are sufficient to conclude that Elizabeth Colquhoun's estate owes one-half of the payments due on the $16,000 mortgage up to the time of Robert Colquhoun's death, and all of the payments due thereafter.

New Jersey has long taken the view that no debts accrue to the estate of the predeceasing spouse on property that the spouses had owned as tenants by the entirety. *See Nobile v. Bartletta*, 109 *N.J.Eq.* 119 (E. & A. 1931); *In re Staiger*, 104 *N.J.Eq.* 149 (E. & A. 1929) (where spouses were tenants by the entirety, wife is entitled to receive from predeceasing husband's estate a pro rata contribution only for those mortgage payments which were due up to the time of his death). The rule is based on the principle that the surviving spouse who becomes sole owner of the property should shoulder the full burden of any subsequent obligations, at least where, as here, the value of the property exceeds the debt.

The majority recognizes that if Robert Colquhoun's son had kept the mortgage instead of giving it to his father, his wife's estate would have been liable for all payments on the full mortgage accruing after his death. The only difference here is that the son gave the mortgage to the father as a gift. He clearly intended the father alone to be the beneficiary of the gift. Moreover, the elder Colquhoun's prompt recordation of the assignment showed his intent not to allow his wife to share in the gift. "An assignment of a mortgage to one of two tenants in common ... does not discharge it." 9 *Thompson on Real Property* § 4798 at 593 (1958). Thus, Robert G. Colquhoun owned the entire mortgage at the time of his death, upon which it passed to his estate. Consequently, Elizabeth Colquhoun's estate now owes payments on a $16,000 mortgage. Yet, the majority concludes that her estate should pay only one-half of the mortgage amount, on the grounds that Robert G. Colquhoun

never gave his wife the chance to purchase her fair share of the assigned mortgage.

I do not deny that a co-tenant who acquires an interest in jointly owned property is normally required to permit the other tenant to share in the benefit, provided the other co-tenant is willing to contribute her fair share of the costs or value within a reasonable time. *Breitman v. Jaehnal*, 99 *N.J.Eq.* 243, 245–46 (Ch.1926), aff'd, 100 *N.J.Eq.* 559 (E. & A. 1927). Nor do I deny that "[r]easonable time is an elastic concept." 4 *Thompson on Real Property*, § 1807, at 208 (1979). What I fail to see, however, is the justification for resurrecting this duty of co-tenants under the facts of this case. Why should the reasonable time for contribution be extended beyond the lives of the two cotenants here? Certainly, fairness does not compel such a result. Because of the fortuity that Elizabeth Colquhoun survived her husband, her estate now owns a home worth at least $89,500. The estate of Robert G. Colquhoun owns only a $16,000 mortgage on the property.

It may be true that the "goal of juridical effort is not logical synthesis but compromise." B. Cardozo, *The Paradoxes of Legal Science* 4 (1928). However, the compromise constructed by the majority rests on a fantasy. Co-tenants do owe duties to each other, but both co-tenants here have died. Placing the entire encumbrance on the estate that inherits the property is by far the fairest result.

I would reinstate the trial court judgment holding Elizabeth Colquhoun's estate liable for payments on the existing $16,000 mortgage. Under *Nobile v. Bartletta, supra,* her estate is entitled to exoneration from her husband's estate of one-half of the mortgage payments owing up to the time of his death.

*For remandment*—Chief Justice WILENTZ and Justices SCHREIBER, HANDLER, POLLOCK and O'HERN—5.

*Dissenting*—Justice PASHMAN—1.