RALPH POWELL, PLAINTIFF–RESPONDENT, v. LORENZO GID-
DENS, JR., MARY FULTON, A/K/A MARY GIDDENS, JERSEY
CENTRAL POWER AND LIGHT CO., DEPARTMENT OF HOUS-
ING AND URBAN DEVELOPMENT, UNITED STATES OF
AMERICA, WASHINGTON, D.C., AND STATE OF NEW JER-
SEY, DEFENDANTS, AND IRVIN E. POVLOW, APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 6, 1988—Decided February 23, 1989.

Before Judges Havey and Brochin.

*Irvin E. Povlow,* appellant, argued the cause *pro se* (*Irvin E. Povlow* filed a *pro se* brief).

*Erwin A. Apell* argued the cause for respondent (*Apell & Mathews,* attorneys; *Ervin A. Apell,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.S.C. (temporarily assigned).

Irvin E. Povlow, the appellant, was the successful bidder for real property at a mortgage foreclosure sale. Ralph Powell, the respondent, was both the mortgagee and the owner of the equity of redemption. Povlow, appearing *pro se,* appeals to this court from an order of the Chancery Division which set aside the judgment for foreclosure, voided the Sheriff's sale [1] and returned his deposit. Since voiding the sale would permit Powell, who attempted unsuccessfully to perpetrate a fraud on prospective bidders and junior lienors, to extricate himself from the consequences of his failed scheme at Povlow's expense, we reverse.

On October 10, 1980, Lorenzo Giddens, Jr., purchased the property which is the subject of this proceeding from John A. Wescott and Yoshiko M. Wescott, his wife. The Wescotts took back a purchase money mortgage in the principal amount of $16,000.

According to Powell's complaint for foreclosure and the certification of Erwin D. Apell, Esq., his attorney, Lorenzo Giddens, Jr. conveyed the property to Powell on July 8, 1986, by a duly

---

[1] Povlow moved for leave to appeal from that order. We granted his motion by an order which states, "We deem appellant's motion a direct appeal from a final judgment."

recorded, bargain and sale deed, with a covenant solely as to the grantor's acts, for a consideration of $5,000. The deed was not expressly subject to outstanding mortgages and other liens, and it did not contain any covenant to assume them. The outstanding liens included Giddens' purchase money mortgage to the Wescotts, an October 17, 1985, second mortgage for $12,301.80 in favor of the Broadway Bank and Trust Company, assigned to the U.S. Department of Housing and Urban Development, and various other smaller mortgages and judgment liens.

Upon acquiring the fee, Powell sought to negotiate with the various lienholders to clear title. Apparently he was unable to reach a satisfactory settlement with at least some of them. On March 23, 1987, he purchased the interest of the Wescotts' in their purchase money mortgage from Giddens for an undisclosed amount. The assignment of the mortgage to Powell was duly recorded on April 6, 1987.

Acting in the right of the purchase money mortgagees, Powell commenced a foreclosure proceeding on April 23, 1987. The complaint, as amended, named Powell as plaintiff and described him as the foreclosing mortgagee by assignment from the Wescotts. It named several of the holders of subordinate liens as defendants. It also named Lorenzo Giddens, Jr. and Mary Giddens, who, the record indicates, was Mr. Giddens' mother, alleging that they were then in possession of the premises and that Mary Giddens might have an equitable interest in the property. Quite intentionally, the complaint did not disclose that Powell was the owner of the fee interest. In fact, the complaint implied that Lorenzo Giddens was a defendant because he was still the owner of the fee.

The judgment for foreclosure was for $21,087.12 plus costs and counsel fees. It recites that the named defendants were duly served and that they defaulted. According to the usual form, the mortgaged premises were ordered to be sold and "the defendants, and each of them, [would] stand absolutely de-

barred and foreclosed of and from any equity of redemption of, in and to so much of said mortgaged premises as shall be sold, as aforesaid, under this Judgment." The legal advertisement of the foreclosure sale announced that "No prior mortgages or liens are outstanding." No announcement was made at the sale to inform prospective bidders that Powell had acquired Giddens' equity of redemption. However, Povlow had discovered that information.

Powell and Povlow were the two bidders at the foreclosure sale, and Povlow finally prevailed with a bid of $24,100. He deposited $3,500 with the Sheriff. Before paying the balance, he telephoned Powell's attorney for title information. The attorney told him that Powell had acquired the fee interest and, according to Povlow's undisputed certification, warned him that "[I]f I settled with the Sheriff he would claim that the owner's interest was not divested. I would lose my investment."

When Povlow insisted on completing his purchase, Powell moved to set aside the sale and Povlow to confirm it. The trial judge denied both Powell's motion for an order directing the sheriff "to relist [the] property for Sheriff's sale" and Povlow's motion for an order directing the sheriff "to deliver to Irvin E. Povlow a good and sufficient Sheriff['s] Deed to [the property] ... upon payment of balance of purchase price...." On its own motion, the court ruled that Powell's failure to disclose in the foreclosure complaint that he had acquired the mortgagor's interest might have prejudiced the rights of junior lienors because that information, if they had known it, would have given them the basis for arguing that the first mortgage and the fee had merged, thereby advancing their liens. Directing a sheriff's deed to Povlow would, in the view of the trial court, "have the inequitable result of foreclosing junior encumbrancers who have now been held not to have had possession of all the facts." Holding that the "unforeclosed interest of Powell [which went] publicly unannounced at the time of the sale" was a "substantial defect in or cloud upon the title of the real estate sold" within the meaning of *N.J.S.A.* 2A:61–16, the court "*sua*

*sponte* ... set aside the judgment entered on November 10, 1987 [for foreclosure] and the execution issued thereon." It also directed that:

> plaintiff may file and serve an amended complaint in which the facts surrounding Powell's title shall be pleaded. The case should be dismissed as to Giddens unless on some basis set forth in the new pleading, an interest in them remains outstanding or a deficiency is sought. If the matter proceeds once again to a sheriff's sale the retention of Powell's equity interest shall be publicly announced prior to the bidding.

The order which was entered to encompass this ruling ordered only that:

> Judgment entered on the above captioned matter on November 10, 1987, be set aside and that the Sheriff is hereby directed to return to Irvin E. Povlow the monies paid to the Sheriff for the Sheriff's sale and that the Sheriff's sale be declared null and void.

The order, which at the court's request was prepared by Powell's attorney, thus failed to incorporate the court's direction setting aside the judgment for foreclosure as well as the sale and requiring the filing and service of an amended complaint disclosing Powell's fee interest in the property.

*N.J.S.A.* 2A:61-16, the statute upon which the trial court relied, is inapplicable to the present case because the function of that statute is to authorize a court to relieve a purchaser at public sale from his bid upon equitable grounds. Here, however, the bidder seeks to confirm the sale, to pay his money and take his deed. Nonetheless, we agree that a court of equity has the inherent power to set aside a foreclosure sale on equitable grounds. *See Penn Federal Savings and Loan Ass'n. v. Joyce,* 75 *N.J.Super.* 275, 278 (App.Div.1962) and cases cited therein. The question which this case presents is whether setting this foreclosure sale aside, in accordance either with the court's letter opinion or with its order, would be equitable and therefore within the court's discretion. We hold that it would not be. *Cf. Shepard v. Barrett,* 84 *N.J.Eq.* 408, 410 (Ch.1915) (A foreclosing mortgagee who has intentionally omitted making a subordinate lienor a party is not entitled to the remedy of strict foreclosure.)

The plaintiff's attorney has stated explicitly that his complaint for foreclosure intentionally omitted a reference to his client's acquisition of the mortgagor's interest. He has candidly explained that the purpose of the omission was to avoid conveying the fee interest to the successful purchaser at the foreclosure sale. He admits that his plan was to announce the omission at the sale, to warn prospective bidders that the purchaser, if he was someone other than Powell, would not get anything for his money, and then, having deterred prospective competing bidders, to buy in the property for a nominal bid, cutting off any encumbrances subordinate to his first mortgage without having to give junior lienors a share in any value of the property in excess of the debt secured by his mortgage.

Plaintiff's scheme is a sham. It is a device to eliminate junior encumbrances without consideration, regardless of the value of the property by which they are secured. Even if the plan were otherwise conceptually sound, equity would not permit it. In the present case, Powell apparently believed that the property was worth more than whatever balance of unpaid principal, interest, and costs were secured by his mortgage, and Povlow was evidently of the same opinion. That presumably was Powell's motivation for his scheme and the reason why both he and Povlow bid actively against each other up to $24,100. However, if there was a surplus, the junior lienors, even those who defaulted, were entitled to share in it in accordance with their respective priorities. *R.* 4:64–3; *N.J.S.A.* 2A:50–37. *Lithauer v. Royle,* 17 *N.J.Eq.* 40, 41 (Ch.1864). *Cf. Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou,* 206 *N.J.Super.* 637 (App.Div.1986).

Of course, a prior mortgagee can cut off subordinate liens without payment, and that is frequently, perhaps usually, what occurs at a foreclosure sale because the bidding does not produce more than what is due to the holder of the senior lien. *See Carteret Sav. and Loan Ass'n v. Davis,* 105 *N.J.* 344, 351 (1987). But the senior lienor will not be permitted to assure that result by drawing his pleadings with the intention of

creating a title defect and then announcing the title defect at the foreclosure sale if the presence of a potentially competing bidder threatens to thwart his plan to buy in the sale property at a nominal price. *Cf. Brady v. Carteret Realty Co.*, 67 *N.J.Eq.* 641 (E. & A. 1905). Having embarked on that plan, surely Powell does not have equitable grounds to cause the court to void the foreclosure sale and resell the property because a competing bidder persisted in bidding up the sale price, despite his warning of an intentionally created title defect.

Furthermore, the legal premise of plaintiff's scheme is unsound even if its inequity were disregarded. Powell could cut off the junior encumbrances only by exercise of the power conferred upon him by the first mortgage which he had acquired from the Wescotts. That mortgage empowered him to satisfy a debt out of property pledged as collateral for the debt by selling that property. In the present case, the collateral was Giddens' fee interest. After sale, the vendee, whether Powell or anyone else, would hold that fee interest free of any liens duly foreclosed which were subordinate to the mortgage. But if the fee interest was not being sold, then the property would remain in Powell's hands encumbered by the junior liens.

In the present case, however, the property did not remain in Powell's hands. As assignee of the first mortgage, he foreclosed that mortgage and caused the sale of the fee interest. For the purpose of determining whether the holders of all outstanding interests were before the court, it is of no significance that Powell described himself in the complaint only as the assignee of the first mortgage. *Cf. Trenton v. Howell*, 132 *N.J.Eq.* 125 (Ch.1942). The fact is that Powell owned both the fee interest and the interest of the first mortgagee, and therefore all necessary parties were before the court. Consequently, in the present case, unlike a case in which the owner of the fee interest is simply not a party, *see e.g. Brundred v. Walker*, 12 *N.J.Eq.* 140, 142 (Ch.1858), the fee was effectively foreclosed

and the sheriff is in a position to convey to Povlow the same title that he would have conveyed if the plaintiff's complaint had properly alleged his fee ownership. As stated in 3 *Jones on Mortgages*, (§ 1654) 285–286 (*7th Ed.*) (1915):

"He [the purchaser] obtains the title of all the parties to the suit, whether their title be that which is set forth in the bill or not. What ever the title of the parties to the suit may be, that is what the court undertakes to sell, and what the purchaser is entitled to have conveyed to him."

*See Champion v. Hinkle*, 45 *N.J.Eq.* 162 (E. & A.1888); *Carteret Sav. & Loan Ass'n, F.A. v. Davis*, 200 *N.J.Super.* 167, 170 (App.Div.1985), rev'd on other grounds 105 *N.J.* 344 (1987); (*Cunningham & Tischler, Mortgages*) 30 *N.J.Practice*, § 201 at 51 n. 18 (1975).

Lastly, we deal with the trial court's suggestion that the interests of the junior encumbrancers require setting aside the foreclosure judgment and the sale. We note that when Powell first acquired the fee interest and then the interest of the first mortgagees, he certainly did not intend the two interests to merge. Consequently, we would suppose, as did the trial judge, that no merger took place. *See Colquhoun (Eliz.) Est. v. Colquhoun (Robt.) Est.*, 88 *N.J.* 558, 565 (1982), where the Court said:

[T]he intention of the parties generally determines whether two property interests will be legally merged. [Citations omitted.] As observed in *Gimbel v. Venino*, 135 *N.J.Eq.* 574, 576 (Ch.1944):

Merger is largely a question of intention and stated generally the law is that when a mortgagee acquires the equity of redemption, the presumption is that he intends to extinguish his mortgage interest by merging it in the estate in fee. The presumption is rebuttable and will not prevail when it is clear that a merger was not intended, which intention may be expressly declared, or may appear from the particular equities of the case....

Nonetheless, we agree with the trial judge that it would be inappropriate to make a final determination on the issue of merger without giving the subordinate lienors whom merger would benefit the opportunity to be heard. However, the equities of the case do not justify and the necessity of the case do not require giving Powell the opportunity of resale solely to protect the holders of subordinate liens if their interests can be protected in another way. We think they can. Therefore we

direct that on remand, if Povlow desires to pursue his legal right to a sheriff's deed, he shall send a notice, in a form approved by the court, to all of the defendants named in the complaint, advising them of the facts which have now been disclosed pertinent to merger and inviting them to appear before the court at a time and date and in accordance with whatever appropriate conditions may be fixed by the court. If Povlow does not desire to pursue his right to a sheriff's deed, then the foreclosure judgment should be vacated and Powell may file and serve an amended complaint as ordered by the trial court. If notice is sent and no one appears to argue that there has been a merger, or if after an appropriate hearing the court determines that there has been no merger, then there will be no occasion to vacate the judgment or set aside the sale, and Povlow should get his deed. If, after notice and hearing, the court determines that there has been a merger, it will proceed to fashion the appropriate remedy. Since the issue of what would be an appropriate remedy in that case has not been briefed or argued before us, we will not attempt to deal with it.

We remand this case to the trial court for further proceedings in accordance with this opinion.